PETER C. ERBLAND, ISBA #2456
perbland@lclattorneys.com
KATHARINE B. BRERETON, ISBA #9583
kbrereton@lclattorneys.com
LAKE CITY LAW GROUP PLLC
435 W. Hanley Avenue, Suite 101
Coeur d'Alene, ID  83815
Telephone: (208) 664-8115
Facsimile: (208) 664-6338

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BETHANY MIKOLAS and SEAN SCOGGIN, husband and wife, | Case No:  2:17-cv-00426-EJL |
| Plaintiffs, | **ANSWER TO FIRST AMENDED COMPLAINT** |
| vs. | |
| UNIVERSITY OF IDAHO, a public university, | |
| Defendant. | |

Defendant University of Idaho, by and through its attorneys of record Peter C. Erbland and

Katharine B. Brereton of Lake City Law Group PLLC, hereby answers Plaintiffs' First Amended

Complaint as follows:

## PRELIMINARY STATEMENT

Title IX rights and student safety at the University of Idaho (the "University") are among

the University's highest values and central to its mission.  Therefore, when the University's efforts

in service of that mission are falsely maligned, the University must set forth the facts accurately.

Otherwise, allowing false allegations to stand would have a chilling effect on survivors of sexual

misconduct coming forward.  This would, in turn, prevent the University from providing critical

services and accommodations to survivors and prevent the pursuit of disciplinary actions against assailants so that they may be held accountable.  The University further affirms that it has not violated any provision of Title IX.  The allegations of wrongdoing against the University are false and the University therefore denies them.

## GENERAL DENIAL

Defendant University of Idaho denies each and every allegation not expressly and specifically admitted in this Answer to Plaintiffs' First Amended Complaint.  The paragraph numbers in this Answer correspond to the paragraph numbers in the First Amended Complaint.

## PARTIES

1.    Defendant admits the allegations in paragraph 1.

2.    Defendant admits the allegations in paragraph 2.

3.    Defendant admits that the University of Idaho is an institution of higher education in the state of Idaho and is under the general supervision, government and control of the Board of Regents of the University of Idaho.

4.    Defendant admits that the University of Idaho is an educational institution located in Latah County, in Moscow, Idaho.  Defendant avers that the University of Idaho was established pursuant to an Act of the Territorial Legislature dated January 30, 1889, which act was incorporated into the Constitution of the State of Idaho in Article IX, Section 10 and Idaho Code § 33-2801.

5.    Defendant admits that the University of Idaho is an institution of higher education.  Defendant denies the remainder of the allegations in paragraph 5.  Defendant avers that pursuant to an Act of the Territorial Legislature dated January 30, 1889, which act was incorporated into the Constitution of the State of Idaho in Article IX, Section 10, and Idaho Code § 33-3803, The

**ANSWER TO FIRST AMENDED COMPLAINT - 2**

Regents of the University of Idaho is a body politic and corporate, a separate and independent legal entity, and a governmental instrumentality for the dissemination of knowledge and learning. Defendant avers that pursuant to the Territorial Act, Article IX, Section 10 of the Idaho Constitution, and Idaho Code § 33-3804, the Regents of the University of Idaho has the power to sue and be sued. Defendant avers that the University of Idaho is not a proper party to this action.

## JURISDICTION AND VENUE

6.      Defendant admits the allegations in paragraph 6.

7.      Defendant admits that this Court has subject matter jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331 because Plaintiff Bethany Mikolas's ("Ms. Mikolas") claims involve a federal question.  Defendant denies that this Court has supplemental jurisdiction over Plaintiffs' state law claims.  Defendant denies the remaining allegations in paragraph 7.  Defendant avers that the Eleventh Amendment bars any claim against a state based on state law and that merely because there is a basis for federal question jurisdiction, such jurisdiction does not override Eleventh Amendment immunity.

8.      Defendant admits the allegations in paragraph 8.

9.      On information and belief, Defendant admits the allegations in paragraph 9.

## PERTINENT FACTS

10.      Defendant realleges and incorporates by reference the above paragraphs as if fully set forth herein.

11.      Defendant admits the allegations in paragraph 11.

12.      Defendant states that it was not present during the alleged sexual assault and is without sufficient information or belief to either admit or deny whether there was a "sexual assault" and therefore leaves Plaintiffs to their proof.  Defendant further states that any alleged "sexual

**ANSWER TO FIRST AMENDED COMPLAINT - 3**

assault" which occurred off campus is not an educational program or activity over which the University has control and therefore denies any implication of wrongdoing.

13.     On information and belief, Defendant admits that Mr. Alexander texted Ms. Mikolas on February 12, 2016, and indicated he was sorry.  On information and belief, Defendant admits that Ms. Mikolas did not return Mr. Alexander's text on February 12, 2016.  Defendant is without sufficient information or belief to either admit or deny the remaining allegations in paragraph 13 and therefore denies the same.

14.     On information and belief, Defendant admits the allegations in paragraph 14.

15.     Defendant admits that Ms. Mikolas and Mr. Alexander were both on the Idaho Law Review.  Defendant is without sufficient information or belief to either admit or deny the remaining allegations in paragraph 15 and therefore denies the same.

16.      Defendant is without sufficient information or belief to either admit or deny the allegations in paragraph 16 and therefore denies the same.

17.     On information and belief, Defendant admits the allegations contained in paragraph 17.

18.     Defendant admits the allegations in the first sentence of paragraph 18.  Defendant denies the remaining allegations in paragraph 18.  Defendant avers that Ms. Mikolas did not report that she had been sexually assaulted, but rather asked Dean Jeffrey Dodge ("Dean Dodge") what the policies and procedures were for reporting sexual assault and misconduct issues, without going into any details.

19.     Defendant denies that Dean Dodge expressed that the process was confidential.  Defendant avers that Dean Dodge explained that it was a private process, but that confidentiality could not be guaranteed because the process is susceptible to public records requests.  Defendant

**ANSWER TO FIRST AMENDED COMPLAINT - 4**

admits that Dean Dodge stated that the parties would not be permitted to discuss the process with other law students.

Defendant admits that Dean Dodge emailed Ms. Mikolas on February 16, 2016, and in that email provided Ms. Mikolas with a list of community and school resources that included the contact information for the Counseling & Testing Center at the University.  Defendant avers that in the email Dean Dodge stated, "Your success as a student is extremely important to me and, as promised, I want to make sure you are aware of all the resources available to you.  I strongly encourage you to seek out these resources, if needed".  In addition to the contact information for the Counseling & Testing Center, Dean Dodge also provided contact information for Alternatives to Violence of the Palouse, the Moscow Police Department, the Office of the Dean of Students, the Student Health Clinic, Gritman Medical Center, Safe Walk (escorts), and the Women's Center at the University.  Dean Dodge identified which of the identified resources were confidential and semi-confidential.  Those that were confidential included the Counseling & Testing Center, Alternatives to Violence of the Palouse, the Student Health Clinic, and the Gritman Medical Center.  The Women's Center was identified as a semi-confidential resource.  Neither the Moscow Police Department nor the Office of the Dean of Students were identified as confidential or semi-confidential.

20.     Defendant admits the allegations in the first, second, and third sentences in paragraph 20.  Defendant denies the remaining allegations contained in paragraph 20.  Defendant avers that in the February 23, 2016, email from Dean Dodge to Ms. Mikolas he stated, "I am sending the report and you and Sean's screenshots along to Director Agidius.  She will be in touch on next steps.  In the meantime, please don't hesitate to reach out to me if you need resources or help."

**ANSWER TO FIRST AMENDED COMPLAINT - 5**

21.     Defendant admits that Ms. Mikolas emailed Dean Dodge on February 24, 2016. Defendant avers that Ms. Mikolas stated, "I'm just wondering if it is appropriate for me to tell Professor Seamon about my concerns so that he can consider that as well, as he makes decisions about how to proceed with law review concerns.  What do you think is best?"  Defendant denies the remaining allegations in paragraph 21.  Defendant avers that Dean Dodge responded to Ms. Mikolas's email and stated, "The matters raised by Dean Seamon have been passed along to the HRAI Office, the same place I submitted your intake interview notes and text messages.  I have communicated to Dean Seamon that another matter was also passed along regarding this student. I do not think it is needed to share more with him at this time.  Director Agidius has confirmed receipt of both emails."

22.     Defendant admits that the Title IX investigation was conducted by Title IX investigators Jessica Atkins ("Ms. Atkins") and Scott Gove ("Mr. Gove").  Defendant denies the remaining allegations in paragraph 22.

23.     Defendant admits the allegations contained in paragraph 23.  Defendant avers that the "no-contact order" further specified, "During any courses you have with Mr. Alexander, you are instructed to sit on opposite sides of the room.  Please contact me directly, and prior to any contact whatsoever, if you have any need to have conversation or interaction.  Said interaction shall pertain only to relevant academic work being discussed.  If you or he are found in violation of any of these provisions outlined in this document further disciplinary action can be taken." Defendant avers that Mr. Alexander was sent a similar "no-contact order" on February 26, 2016.

24.     Defendant admits that Mr. Alexander was permitted to remain in the classes he and Ms. Mikolas shared.  Defendant denies the remaining allegations in paragraph 24 and denies the

**ANSWER TO FIRST AMENDED COMPLAINT - 6**

implication that it was inappropriate for the University to permit Mr. Alexander to continue to attend shared classes.

25.     Defendant is without sufficient information or belief to either admit or deny the allegations in paragraph 25, and therefore denies the same.

26.     Defendant admits that on March 4, 2016, Ms. Mikolas emailed Dean Dodge. Defendant avers that Ms. Mikolas stated, "I was just wondering how to handle law review events, given that Paul and I have a no contact order with each other.  Is it ok for me to attend, or would it be better to sit it out?" and stated "Should I plan to go or not?"

27.     Defendant admits that Dean Dodge responded to Ms. Mikolas's email.  Defendant avers that Dean Dodge stated, "You should absolutely still attend Law Review events during this time.  If you want to go, please do.  Now if Paul is present, it is advisable that you do not speak with him.  He will have the same obligation under the no contact order.  Make sense?" Defendant denies the remaining allegations in paragraph 27.

28.     Defendant admits that on March 4, 2016, Ms. Mikolas replied to Dean Dodge's email response and stated, "That makes sense.  I think I will probably sit this one out, just to be sure.  It's one thing to sit on opposite sides of a big class, and another to sit on opposite sides of a small group of friends."  Defendant is without sufficient information or belief to either admit or deny the remaining allegations in paragraph 28, and therefore denies the same.

29.     Defendant denies the allegations in paragraph 29 and specifically denies the implication that Dean Dodge, in the above-referenced March 4, 2016, email, encouraged Ms. Mikolas to socialize with Mr. Alexander.  Defendant further denies the implication that the no-contact order was to prevent Ms. Mikolas and Mr. Alexander from attending the same events, functions, and/or classes.

**ANSWER TO FIRST AMENDED COMPLAINT - 7**

30.     Defendant denies the allegations contained in paragraph 30.  Defendant avers that Mr. Alexander was suspended from attending Law Review meetings, sessions, and events until the conclusion of the investigation and a determination.

31.     Defendant admits that Ms. Mikolas emailed Dean Dodge on March 4, 2016, and stated, "Is there a time line for when the investigation will be concluded?"  Defendant denies the remaining allegations in paragraph 31.  Defendant avers that the allegations in paragraph 31 falsely represent the University's response to Ms. Mikolas's complaint.

32.     Defendant admits that Erin Agidius ("Ms. Agidius") responded to Ms. Mikolas's email.  Defendant avers that Ms. Agidius stated, "We aim to complete all investigations within 60 days.  Delays do occur (e.g. scheduling conflicts, academic holidays, etc.) which can extend our timeline.  If you have any questions as the process progresses, please feel free to email or call me.  I'm more than happy to address those questions or any concerns you may have."

33.     Defendant is without sufficient information or belief to either admit or deny the allegations contained in paragraph 33 because the allegations are vague and ambiguous, and therefore denies the same.  Defendant denies the implication that the University's investigation of Ms. Mikolas's complaint was untimely.  Defendant avers that Ms. Mikolas met with Dean Dodge, who was a Deputy Title IX Coordinator and a Title IX Investigator, on February 16, 2016, to discuss "personal upsets" that necessitated changes to her work and schedule.  After this meeting, Dean Dodge and Ms. Mikolas were in contact and she then made a formal complaint to Dean Dodge on February 23, 2016.   Ms. Mikolas and Dean Dodge continued to have email communications after she made a complaint, and Ms. Mikolas was contacted via email by Ms. Agidius on March 7, 2016.  On March 22, 2016, Ms. Agidius emailed Ms. Mikolas, with Ms. Atkins and Mr. Gove cc'd on the email, and stated, "As the investigation continues, I wanted to

let you know that you are always more than welcome to speak to myself or Dean Dodge regarding the process but if you can also speak with the investigators regarding any questions or anything else you would like to share about the incident.  The investigators, Jessica Atkins and Scott Gove (CCd on this email) are happy to directly connect with you and are also available to answer questions and will continue to gather information.  As always, please contact me if you have any questions or concerns."

34.     Defendant admits that Ms. Atkins emailed Ms. Mikolas on March 24, 2016, and requested a meeting with Ms. Mikolas.  Defendant admits that the meeting was scheduled for March 28, 2016.  Defendant denies the remaining allegations in paragraph 33 and the implication that the University's investigation of Ms. Mikolas's complaint was untimely.

35.     Defendant admits that Ms. Mikolas met with Ms. Atkins and Mr. Gove on March 28, 2016.  Defendant admits that on March 28, 2016, Ms. Mikolas provided Ms. Atkins and Mr. Gove copies of text messages.  Defendant is without sufficient information or belief to either admit or deny the remaining allegations in paragraph 35 and therefore denies the same.

36.     Defendant is without sufficient information or belief to either admit or deny the allegations contained in paragraph 36 and therefore denies the same.

37.     Defendant is without sufficient information or belief to either admit or deny the allegations contained in the first sentence of paragraph 37.  Defendant admits that the University did not inform Ms. Mikolas that Mr. Alexander had obtained a lawyer.  Defendant denies the implication that it was obligated to inform Ms. Mikolas that Mr. Alexander had retained counsel.

38.     Defendant denies the allegations contained in paragraph 38.  Defendant avers that the Notice of Determination was emailed from Alex Roberts to Mr. Alexander on April 27, 2016.

**ANSWER TO FIRST AMENDED COMPLAINT - 9**

39.     Defendant admits that Ms. Mikolas emailed Dean Dodge, Ms. Atkins, Mr. Gove, and Ms. Agidius on March 28, 2016.  Defendant avers that Ms. Mikolas informed Dean Dodge, Ms. Atkins, Mr. Gove, and Ms. Agidius that Mr. Alexander's lawyer had contacted another law student, and she expressed concern that the attorney "is apparently discussing a matter that I was assured would be kept confidential and private with a wide range of individuals who have no personal involvement in the situation at all."  Defendant avers that Ms. Mikolas stated, "Can someone please explain to me what is going on?" in the context of the attorney contacting a law student. Defendant denies that Ms. Mikolas asked about the status of the investigation.  Defendant is without sufficient information or belief to either admit or deny the remaining allegations contained in paragraph 39, and therefore denies the same.

40.     Defendant admits that Ms. Atkins responded to Ms. Mikolas's email.  Defendant denies the remaining allegations contained in paragraph 40.  Defendant avers that Ms. Atkins emailed Ms. Mikolas on March 28, 2016, and that Ms. Atkins stated, "I am very confused as to why Jay Johnson, Paul's lawyer, is contacting anyone at all!  I just read your email to Erin Aguidius [*sic*] and will follow up with her immediately.  Thank you for notifying us.  We'll be back in touch with you very soon."

41.     Defendant admits that on March 29, 2016, Ms. Agidius emailed Ms. Mikolas. Defendant avers that Ms. Agidius stated "Hopefully I can address your questions but please feel free to call or email if you have further questions or concerns.  Jay Johnson is a local attorney in Moscow but is not working on behalf of the institution.  I want to be sure to clarify that while we are unable to prevent someone outside of the institution from asking questions, the university is maintaining the privacy of the process and will uphold those involved in the process to the standards we have outlined.  Therefore, if other similar issues arise, please let me know so that I

**ANSWER TO FIRST AMENDED COMPLAINT - 10**

can assess for potential violations of our harassment or retaliation policies.  Because Mr. Johnson

is external to the university, students do not have to speak with him if they choose not to do so and

our authority over his actions are limited but please let either myself or the investigators know if

it continues and any details that might be relevant."

42.     Defendant denies that in the March 29, 2016, email Ms. Agidius did not address

Ms. Mikolas's privacy concerns or confidentiality.   Defendant denies that a "confidentiality

promise" was made by the University to Ms. Mikolas.   Defendant avers that the allegations in

paragraph 42 falsely represent the University's response to Ms. Mikolas's complaint.    Defendant

avers that Ms. Agidius stated, "I want to be sure to clarify that while we are unable to prevent

someone outside of the institution from asking questions, the university is maintaining the privacy

of the process and will uphold those involved in the process to the standards we have outlined.

Therefore, if other similar issues arise, please let me know so that I can assess for potential

violations of our harassment or retaliation policies."

43.     Defendant denies that Ms. Agidius did not provide suggestions on how to alleviate

Ms. Mikolas's privacy and confidentiality concerns.  Defendant avers that in the March 29, 2016,

email Ms. Agidius further stated, "Dean Dodge can certainly serve as an excellent support with

regard to your academic and classroom needs.  Additionally, I would strongly encourage you to

connect with a counselor from the Counseling and Testing Center (208-885-6716).  The CTC is

entirely confidential.  The Women's Center (208-885-2777) is another excellent resource where

you can speak to someone and seek guidance or support or resources regarding this process.  This

process is certainly stressful enough and I can understand that further inquiry from someone

outside the institution can add to the already uneasy feeling you might be experiencing.  I would

be more than happy to meet with you in person or speak to you by telephone to discuss further any

**ANSWER TO FIRST AMENDED COMPLAINT - 11**

concerns or concerns [*sic*] you might have."  Defendant denies the remaining allegations contained in paragraph 43.

44.     Defendant admits that Ms. Mikolas replied to the email from Ms. Agidius and stated, "Correct me if I'm wrong: basically, there's nothing you can or will do about this". Defendant avers that Ms. Mikolas further stated, "I should just get more counseling?  Hiring a lawyer and broadcasting the fact of the assault, without violating the sanctity of the 'administrative process,' is not retaliation and is all above the line?"  Defendant denies the remaining allegations contained in paragraph 44.

45.     Defendant denies the allegations in paragraph 45.

46.     Defendant admits that Dean Dodge offered to have Ms. Mikolas's classes recorded. Defendant avers that on March 29, 2016, Dean Dodge emailed Ms. Mikolas in response to her March 28, 2016, email and stated, "While I'm not involved in the investigation process any longer, I want to assure you that you have my unconditional support in terms of accessing your education and all opportunities related to it."  Dean Dodge further stated, "I want to make sure you know that I am available today if you need to chat by phone or in person.  The Counseling and Testing Center can also handle emergency, same day appointments if you say it is an emergency when you call. Do you need or want their number?  Is there anything I can do to help you through all this? Do you want me to have your classes recorded the rest of the week and perhaps let your faculty know you may need to miss?  I want to help mitigate any impact this process and the investigation has on your education.  Just let me know what would help and I'll try to make it happen."  Defendant denies the remaining allegations in paragraph 46.

47.     Defendant denies the allegations in paragraph 47.  Defendant avers that Ms. Mikolas responded to Dean Dodge's email and stated, "Thanks for your help, and I would

**ANSWER TO FIRST AMENDED COMPLAINT - 12**

appreciate you letting my professors know that I won't be at school this week.  If they could record classes that would be great.  I don't know when or if I will be back at school.  Can you tell me more about withdrawal, and any other options that may be available?"

48.   Defendant denies the allegations in paragraph 48.

49.   Defendant admits that on March 30, 2016, Ms. Mikolas met with Ms. Agidius and informed Ms. Agidius of several concerns she had with the investigatory process.  Defendant admits that some of the concerns raised by Ms. Mikolas included her seating in classes, law review events, and concerns about Mr. Alexander's attorney contacting other law students.  Defendant denies the remaining allegations in paragraph 49.

50.   Defendant admits that Ms. Mikolas raised as part of her concerns, accommodations being provided to her by the University.  Defendant denies the remaining allegations in paragraph 50.

51.   Defendant admits that Ms. Mikolas expressed her discomfort with her study carrel's proximity to Mr. Alexander's study carrel.  Defendant is without sufficient information or belief to either admit or deny the remaining allegations in paragraph 51 and therefore denies the same.

52.   Defendant admits that Ms. Mikolas expressed that she did not want to pass Mr. Alexander when he smoked outside one of the building entrances. Defendant is without sufficient information or belief to either admit or deny the remaining allegations in paragraph 52 and therefore denies the same.

53.   Defendant denies the allegations in paragraph 53.   Defendant avers that the allegations in paragraph 53 falsely represent the University's response to Ms. Mikolas's complaint. Defendant avers that on February 16, 2016, Dean Dodge emailed Ms. Mikolas a list of resources which included the contact information for Safe Walk escorts for on campus escorts.  On March

**ANSWER TO FIRST AMENDED COMPLAINT - 13**

29, 2016, Dean Dodge responded to Ms. Mikolas's email wherein she had requested information about withdrawal, and stated, "Please know that you are extremely welcome to be on campus, in classes and pursuing your education.  I'm happy to arrange for seating charts to change, provide physical escorts if it makes you feel safe or whatever you think you need."

54.     Defendant admits that on March 30, 2016, Ms. Mikolas emailed Ms. Agidius just before 5 p.m. and expressed frustration about her concerns.  Defendant denies the remaining allegations in paragraph 54.

55.     Defendant denies the allegations in paragraph 55.  Defendant avers that on March 30, 2016, Ms. Agidius emailed Ms. Mikolas and stated, "As we discussed this morning, I wanted to follow-up on a few points we discussed and address your concerns to the best I am able: 1) You indicated that your carrel location is very close to that of Mr. Alexander.  There are several open carrels on the second floor but also on the first floor that can be made available to you if you desire. If you would like to relocate, you may either contact myself of [*sic*] Dean Dodge for reassignment."

56.     Defendant avers that the allegations in paragraph 56 do not accurately represent the statements of Ms. Agidius and therefore denies the allegations.  Defendant avers that in the March 30, 2016, email to Ms. Mikolas, Ms. Agidius further stated, "With regard to the concerns of Mr. Alexander's role on Idaho Law Review, he has only been temporarily relieved of his responsibilities until the conclusion of the investigation."  Defendant avers that Ms. Agidius stated, "I have emailed Mr. Alexander and instructed him to find an alternate smoking location.  Please let me know if any issues or concerns persist."

57.     Defendant denies the allegations in paragraph 57.  Defendant avers that the allegations in paragraph 57 falsely represent the University's response to Ms. Mikolas's complaint.

58.     Defendant avers that the allegations in paragraph 58 do not accurately represent the statements of Ms. Agidius in the March 30, 2016, email to Ms. Mikolas and therefore denies the allegations in paragraph 58.  Defendant avers that Ms. Agidius addressed Ms. Mikolas's concerns regarding common classes Ms. Mikolas had with Mr. Alexander.   Defendant avers that Ms. Agidius stated, "Your seat reassignment, within your classes, although voluntary, is appropriate. I sought to determine if another section from the Boise campus could be provided via teleconference however the classes are not covering the material in the same order."

59.     Defendant denies the allegations in paragraph 59.

60.     Defendant avers that the allegations contained in paragraph 60 do not accurately represent the statements of Ms. Agidius in the March 30, 2016, email to Ms. Mikolas and therefore denies the allegations contained in paragraph 60.  Defendant avers that Ms. Agidius stated, "I did learn that despite the passing deadline to participate in the Boise program next year, should you desire this change, a spot could be made available to you.  This is not a requirement or an obligation on your part, merely information I learned in the course of my follow-up that I felt you may want to know."

61.     Defendant denies the allegations contained in paragraph 61.  Defendant avers that the University never requested Ms. Mikolas to transfer to the Boise campus.  Defendant avers that the allegations in paragraph 61 falsely represent the University's response to Ms. Mikolas's complaint.

62.     Defendant avers that the allegations contained in paragraph 62 do not accurately represent the statements of Ms. Agidius in the March 30, 2016, email to Ms. Mikolas and therefore denies the allegations contained in paragraph 62.  Defendant avers that Ms. Agidius stated, "Under the Student Code of Conduct, it is a violation of the code for a student to harass or intimate any

person participating in a Dean of Students (DOS) investigation and could result in a potential violation of the student code of conduct.  Additionally, to disrupt or interfere with DOS's investigation, to attempt to discourage an individual's participation in the student conduct system, or to retaliate against anyone for participating in the student conduct system would likewise possible [*sic*] result in a violation of the student code of conduct.  If we become aware of conduct that potentially rises to this level, either my office or the Office of the Dean of Students will investigate the matter as a potential violation of the student code of conduct.  However, contacting potential factual witnesses as part of an independent investigation into the incident, by itself, is unlikely to rise to the level of a violation of the student code of conduct."

63.     Defendant admits that Ms. Mikolas responded to Ms. Agidius's March 30, 2016, email and made such statement as quoted in paragraph 63.  Defendant denies the remaining allegations contained in paragraph 63.

64.     Defendant admits that on March 31, 2016, Ms. Atkins emailed Ms. Mikolas with questions about Ms. Mikolas's alcohol consumption.  Defendant avers that in the email to Ms. Mikolas, Ms. Atkins stated, "[T]here are two further questions that we need to ask you.  1. On average, how often would you say you drink a week? 2. Within that week, how many drinks would you say you have a day?"  Defendant specifically denies that the University treated Ms. Mikolas like the perpetrator.  Defendant denies the remaining allegations in paragraph 64.  Defendant further denies the implication that the email from Ms. Atkins on March 31, 2016, was a response to Ms. Mikolas's email on March 28, 2016, to Ms. Agidius wherein Ms. Mikolas expressed her frustration with the investigatory process.  Defendant further denies the implication that it was improper for Ms. Atkins to inquire about Ms. Mikolas's alcohol consumption.  Defendant avers that information regarding Ms. Mikolas's alcohol consumption was pertinent to the Title IX

investigation in order for the investigators to determine whether Ms. Mikolas was able to consent due to her level of intoxication.

65.     Defendant admits that Ms. Mikolas emailed Dean Dodge on April 3, 2016. Defendant denies the remaining allegations and implications in paragraph 65 because the allegations falsely represent the University's response to Ms. Mikolas's complaint.  Defendant avers that Dean Dodge emailed Ms. Mikolas on March 29, 2016, and stated, "If you need more than this week off to consider everything, please let me know and I can talk with your faculty and LawTech about classes next week too."  In the email on April 3, 2016, Ms. Mikolas stated, "Thanks for your offer, and I do need a bit more time.  Can you please talk to law and faculty about recording classes for me this week?"

66.     Defendant denies that Ms. Mikolas informed Dean Dodge in the April 3, 2016, email that she was suffering from extreme depression, had acute anxiety, and had been attending frequent counseling sessions.

67.     Defendant admits that Dean Dodge emailed Ms. Mikolas on April 4, 2016, and advised Ms. Mikolas that he had arranged to have Ms. Mikolas's classes recorded that week. Defendant avers that the remaining allegations contained in paragraph 67 do not accurately represent the sequence of communications between Ms. Mikolas and Dean Dodge and do not accurately represent Dean Dodge's response to Ms. Mikolas, and therefore denies the remaining allegations.  Defendant avers that on March 29, 2016, in response to Ms. Mikolas's request for information about withdrawal, Dean Dodge emailed Ms. Mikolas and stated, "Given the emotional toll this matter has placed on you, I believe you could qualify for a medical withdrawal.  A medical professional would need to submit a letter to the Dean of Students Office supporting your pursuit of a medical withdrawal and they'd process it from there.  The professional can be a counselor

**ANSWER TO FIRST AMENDED COMPLAINT - 17**

from our Counseling and Testing Center.  The medical withdrawal process is more financially favorable than just simply withdrawing from classes."  Dean Dodge provided Ms. Mikolas with links to websites for withdrawal information.  Dean Dodge further stated, "If pursuing this path isn't for you, you can always petition to withdraw from classes with the assistance of Director Luebbert. The financial terms are less favorable in this scenario and it requires a little more work since you are after the deadline to simply go on Vandalweb and withdraw.  Before you consider any of these options or take action, please do seriously consider talking to someone at the Counseling and Testing Center.  I also would love to speak with you to talk through these options. I'm happy to do that outside the College of Law at an on campus office that is comfortable for you."

68.      Defendant denies that the Title IX investigation report was issued on April 4, 2016. Defendant denies that the Title IX investigation report found that Ms. Mikolas had been sexually assaulted.  Defendant denies that Ms. Mikolas was not notified that the Title IX investigators had issued a finding.  Defendant avers that the Title IX investigation report was not completed until May 10, 2016, and that the final report is incorrectly dated.  Defendant admits that the investigation concluded that, "Based on the totality of the circumstances, the information obtained pursuant to this investigation, the credibility of the allegation, and based on a more likely than not standard of proof, the investigators determine that it is reasonable to conclude that it is more likely than not that the Respondent engaged in sexual contact without consent on or about February 11, 2016 in violation of FSH, Chapter 2, Section 2300: Student Code of Conduct, Article II, A-3 (b) and/or (d)."  Defendant avers that Ms. Mikolas's allegations against Mr. Alexander, as reported to the University, were not that Mr. Alexander engaged in "sexual assault" as that term is defined in the

Student Code of Conduct, FSH 2300 A-3(d)(2)(ii), but that he engaged in behavior that constituted "unwelcome sexual conduct" as defined in FSH 2300 A-3(d)(1).

69.     Defendant admits that Mr. Roberts emailed Ms. Mikolas on May 9, 2016, and requested to meet with Ms. Mikolas to discuss the investigative finding and the conduct process. Defendant denies that Mr. Roberts indicated that "the sexual assault appears to be heading to a conduct hearing."   Defendant avers that Mr. Roberts stated that he was "pursuing a conduct violation by Paul Alexander based on allegations we investigated.  The matter appears to be heading for a conduct hearing".

70.     Defendant admits that Ms. Mikolas met with Mr. Roberts on May 10, 2016, and at that meeting reviewed the findings of the Title IX investigation.  Defendant denies the remaining allegations in paragraph 70.  Defendant avers that the Title IX investigation did not find that a sexual assault occurred.

71.     Defendant admits the allegations in paragraph 71.

72.     Defendant admits that Ms. Mikolas received a copy of the Title IX investigation report on July 13, 2016.  The remainder of the allegations in paragraph 72 are vague and ambiguous and Defendant therefore denies them.

73.     Defendant admits the allegations in paragraph 73.

74.     Defendant admits that Mr. Roberts emailed Ms. Mikolas on July 20, 2016, and informed her that she had the right to make any statements she wished and call any witnesses she wished.  Defendant admits that Ms. Mikolas emailed Mr. Roberts on July 20, 2016, regarding the statement Mr. Alexander submitted to the Title IX investigators, the hearing and witnesses who would be called at the hearing, and the statement Ms. Mikolas prepared to read at the hearing. Defendant admits that Ms. Mikolas was not offered an attorney to represent her at the hearing.

**ANSWER TO FIRST AMENDED COMPLAINT - 19**

Defendant avers that the University never provides nor offers to provide any student with an attorney to represent them during the student disciplinary process.   Defendant denies the implication that the University should have offered Ms. Mikolas an attorney.   Defendant avers that the student disciplinary review process is not akin to a court of law nor does it serve the same purpose.  Defendant admits that Ms. Mikolas did not receive the materials submitted to the SDRB chair by Mr. Alexander prior to the hearing.

75.     Defendant admits that Ms. Mikolas provided information at the hearing and read the statement she prepared.   Defendant denies that Ms. Mikolas asked one question of Mr. Alexander.   Defendant denies the implication that Ms. Mikolas was only allowed to ask one question.   Defendant avers that Ms. Mikolas directed the following remarks and questions to Mr. Alexander at the hearing: "It sounds like your theory of why I made a report and why I went through all this was to cover a mistake that I made and protect my relationship with Sean.   But you've also testified that you're absolutely adamant about the fact that you would never tell him and that your only regret was betraying him.   So, why would I make it up?   Why would I go through the pain and disruption of an investigation to keep it from Sean when I could just keep my mouth shut?  Why would I tell him in the first place?"  Defendant admits that Ms. Mikolas received the materials submitted by Mr. Alexander for the hearing.

76.     Defendant denies that Ms. Mikolas received the SDRB Determination on July 27, 2016.   Defendant avers that Mr. Roberts emailed Ms. Mikolas the SDRB determination on July 26, 2016, and that the SDRB panel found that by a preponderance of the evidence Mr. Alexander violated Article II, Section A-3(d)(1) (Sexual misconduct).   Defendant denies that the Title IX Investigation found that Mr. Alexander sexually assaulted Ms. Mikolas.  Defendant denies that the

SDRB found that Mr. Alexander sexually assaulted Ms. Mikolas.  Defendant denies the remaining allegations in paragraph 76.

77.     Defendant admits that Ms. Mikolas emailed Mr. Roberts on August 1, 2016, and asked if Mr. Alexander had appealed the SDRB decision and indicated that Mr. Alexander was apparently registered for a class for which she was also registered.  Defendant denies the remaining allegations in paragraph 77.

78.     Defendant admits that Ms. Mikolas was informed on August 2, 2016, that Mr. Alexander had appealed the decision of the SDRB panel and that she had the right to respond to the appeal.

79.     Defendant admits that Mr. Roberts informed Ms. Mikolas that Mr. Alexander had the right to attend classes while the appeal was pending.  Defendant denies that Mr. Roberts stated that developing a plan to avoid contact with Mr. Alexander was a good idea.  Defendant avers that in the August 2, 2016, email Mr. Roberts stated, "He does have the right to attend classes while appeals are pending so developing a "plan" to avoid contact among the parties is a good idea.  It will have to be reasonable [*sic*] plan for both sides and I'm sure Jeff will be involved in making such a plan."

80.     Defendant admits that Ms. Mikolas emailed Dean Dodge on August 2, 2016. Defendant avers that Ms. Mikolas asked for suggestions on how to resolve the issue that she and Mr. Alexander were both enrolled in the same bankruptcy class.  Defendant avers that Ms. Mikolas stated, "I understand that he is allowed to continue attending class."  Defendant avers that on August 3, 2016, Dean Dodge responded to Ms. Mikolas's email and stated, in part, "Perhaps we could schedule a meeting the week before school starts to discuss not just this class, but any others where similar issues could arise.  Does that sound like a good plan?  Our goal is to ensure you

**ANSWER TO FIRST AMENDED COMPLAINT - 21**

access to your education and have this matter impact you as little as possible."  Defendant denies the remaining allegations in paragraph 80.

81.    Answering paragraph 81, Defendant avers that Ms. Mikolas replied to the August 3, 2016, email from Dean Dodge on August 8, 2016, and stated, "That sounds like a good plan, and please just let me know when it is convenient for you to meet!"  Defendant admits that Dean Dodge emailed Ms. Mikolas on August 8, 2016, and asked to check in on Friday, August 19, 2016. Defendant admits that Dean Dodge emailed Ms. Mikolas on August 17, 2016, and stated, in part, "Let's shoot for 10am [*sic*] on Friday" and "I look forward to brainstorming with you how to best address that class."  Defendant avers that Dean Dodge also stated in the email that his mother was in hospice care, was expected to pass away at any minute, and that if she did not pass away the next day, August 18, 2016, he might have to reschedule their meeting for Friday, August 19, 2016.

82.    Defendant admits that Ms. Mikolas emailed Dean Dodge on August 18, 2016. Defendant admits that Ms. Mikolas indicated that she was not comfortable being in the class with Mr. Alexander.  Defendant avers that Ms. Mikolas stated, "I actually am not able to meet tomorrow after about 8:30 or 9 – would next week be better? Or maybe just email?  I'm really not sure what the options are for how to deal with the class, except that Paul needs to not be in it!"

83.    Defendant admits that Ms. Mikolas emailed Dean Dodge on August 21, 2016. Defendant avers that Ms. Mikolas stated, "I'm concerned that I did not receive a response from you or anyone else at the university regarding the conflict between Paul's registration in bankruptcy and compliance with the no contact orders."  Defendant denies the remaining allegations in paragraph 83.  Defendant avers that Ms. Mikolas further stated, "I do hope that the university is taking my safety and the no contact orders very seriously, and will communicate with me immediately about what I should expect tomorrow morning.  Obviously, being in the same

class room with Paul will not work for me, and I do hope that the instructor will not be forced to address the situation tomorrow morning as our first order of business."

84.     Defendant admits that on August 21, 2016, Dean Dodge responded to Ms. Mikolas's email.  Defendant avers that Dean Dodge stated, "My Mom died on Friday and that's been my only priority.  Since we last emailed, I heard back from the officials in charge of this matter, including enforcement of the no contact order, and all have informed me that Paul is permitted to attend the class while the final appeal awaits a decision.  This is the final guaranteed appeal though and if the previous decisions are affirmed the sanctions will go into effect immediately.  That would mean he is no longer in the class.  I'm told we should expect that decision soon…I will speak with the professor to inform him of the no contact orders at potential conflict in your class.  According to the Dean of Students Office those orders have been respected during this time and do not appear at risk of being disregarded.  I'll share that with the professor simply to avoid any randomly assigned group projects or issues in the class…The other thing I'll do is write each person with a no contact order in place to remind them of it…I understand this is not your desired result by raising this concern but while in the appeal process Paul does have the right to come to class.  You also have the right to attend class and continue your education.  Your concern is a valid one to me as those two rights could be in conflict with one another.  If the actual learning environment this week proves too challenging with the no contact orders, let's get a meeting scheduled with Dean of Students Office and Human Rights, Access and Inclusion Office to discuss it."

85.     Defendant admits that Ms. Mikolas responded to the email from Dean Dodge and stated, "I expect at an absolute minimum some accommodation via video conferencing.  I will not

**ANSWER TO FIRST AMENDED COMPLAINT - 23**

be in the same class room with him – there is no way to avoid contact in a small class room." Defendant denies the remaining allegations and implications in paragraph 85.

86.     Defendant admits that Dean Dodge replied to the email from Ms. Mikolas and stated, "I'm happy to have the classes recorded this week if you want to take this further." Defendant avers that Dean Dodge further stated, "I'll do that now and inform the university officials in charge of this that you are not satisfied with the support available.  What time are you free tomorrow?"

87.     Defendant admits that the common class Ms. Mikolas shared with Mr. Alexander was bankruptcy.  Defendant denies that the remaining allegations in paragraph 87.

88.     Defendant denies the allegations in paragraph 88.  Defendant avers that the University instructed Mr. Alexander to not attend the bankruptcy class.  Defendant avers that Ms. Mikolas was informed on August 26, 2016, by Dr. Hassell Morrison, the Associate Dean of Students, that Mr. Alexander had been informed that he was not to attend the class.

89.     Defendant admits that Ms. Mikolas emailed Dean Dodge.  Defendant avers that the remaining allegations in paragraph 89 imply that the University failed to offer accommodations to Ms. Mikolas and therefore denies them.

90.     Defendant avers that the allegations in paragraph 90 do not accurately represent the sequence of communications between Ms. Mikolas and Dean Dodge, and that prior to the email referenced in paragraph 90, several emails were exchanged between Ms. Mikolas and Dean Dodge. Defendant admits that, in the email referenced in paragraph 90, Dean Dodge summarized the accommodations he had offered, which included (1) notification to faculty of the no contact orders so as to avoid classroom work and participation issues; (2) a reminder of the no contact orders to the affected students; (3) arranging for the bankruptcy class to be recorded; (4) checking on the

**ANSWER TO FIRST AMENDED COMPLAINT - 24**

possibility of video conferencing; (5) assisting with seating concerns. Defendant avers that Dean Dodge further stated, "I hope you know I'm really not trying to make this harder than it already is for you. In talking with the DOS Office when you wrote this summer we had really hoped to have more clarity by now. I'm hoping for you that comes very soon so we can plan next steps accordingly. I'm in and available tomorrow. Do you have time after 11:30 or would you prefer we not meet? I'll understand either way." Defendant denies the remaining allegations in paragraph 90.

91.     Defendant admits that Ms. Mikolas responded to the email from Dean Dodge wherein he summarized the accommodations he had offered. Defendant avers that Ms. Mikolas stated, "[Y]ou offered to notify faculty and remind students of no contact orders, and only after I voiced my extremely strong objection did you offer to exclude me Completely [*sic*] from class and have it recorded." Defendant admits that Ms. Mikolas expressed her other frustrations with the accommodations. Defendant denies the remaining allegations and implications in paragraph 91.

92.     Defendant admits that the quoted response in paragraph 92 is contained in the same email from Ms. Mikolas to Dean Dodge referenced in paragraph 91. Defendant denies that the University failed to accommodate or help Ms. Mikolas. Defendant denies the remaining allegations and implications in paragraph 92.

93.     Defendant admits that Ms. Mikolas emailed Mr. Roberts and the quoted text in paragraph 93 was contained in the email. Defendant denies the remaining allegations in paragraph 93.

94.     Defendant admits that on August 22, 2017, Ms. Mikolas emailed Dean Dodge. Defendant admits that the quoted language in paragraph 94 is contained in the email. Defendant denies the remaining allegations and implications in paragraph 94.

95.     Defendant avers that pursuant to Family Educational Rights and Privacy Act regulations, it cannot disclose personally identifiable information from an education record of a student without their consent, and therefore cannot admit or deny the identities of the students named in the allegations in paragraph 95.  Defendant admits that a student in the law school emailed Dean Dodge on August 22, 2016, and expressed the student's belief that a no contact order existed between the student and Mr. Alexander.  Defendant admits that another student in the law school emailed Dean Dodge on August 22, 2016, and expressed the student's belief that a no contact order existed between the student and Mr. Alexander, and that they were in the same bankruptcy class.  Defendant denies the remaining allegations in paragraph 95.

96.     Defendant admits that Ms. Mikolas emailed the professor of the bankruptcy class and stated, "I am not currently able to attend class due to the school's inaction in appropriately accommodating a no contact order between myself and another student convicted of violating the student code of conduct."  Defendant denies that Dean Dodge and the University did not respond to Ms. Mikolas.  Defendant denies that Dean Dodge and the University did not attempt to accommodate or help Ms. Mikolas.  Defendant denies the remaining allegations and implications in paragraph 96.

97.     Defendant is without sufficient information or belief to either admit or deny the allegations in paragraph 97 and therefore denies the same.

98.     Defendant admits that Ms. Mikolas was ranked in the top ten of her class at the end of the Fall 2015 semester.  Defendant admits that Ms. Mikolas was not ranked in the top ten of her class at the end of the Spring 2016 semester.  Defendant avers that Ms. Mikolas was ranked 9th out of 101 students at the end of the Fall 2015 semester; 11th out of 101 students at the end of the Spring 2016 semester; 8th out of 102 students at the end of the Fall 2016 semester; and 8th out of

85 students at the end of the Spring 2017 semester.  Defendant avers that Ms. Mikolas graduated in the top ten percent of her class at a higher class rank than she had at the end of the Fall 2015 semester.  Defendant states that it was not present during the alleged sexual assault and is without sufficient information or belief to either admit or deny whether there was a "sexual assault" and therefore leaves Plaintiffs to their proof.  Defendant denies the remaining allegations in paragraph 98.

99.     Defendant denies the allegations in paragraph 99.  Defendant avers that University officials offered academic support services to Ms. Mikolas, which included providing contact information for both on campus and off campus support resources; offering to record Ms. Mikolas's classes; recording Ms. Mikolas's classes; offering numerous meetings to discuss Ms. Mikolas's concerns throughout the process; encouraging Ms. Mikolas on numerous occasions to utilize the services provided by the University's Counseling and Testing Center; contacting faculty members on Ms. Mikolas's behalf to let them know that Ms. Mikolas would not be in class; permitting Ms. Mikolas to miss class without penalty; informing Ms. Mikolas of her options for withdrawal, including the option of a medical withdrawal which would be more financially favorable for Ms. Mikolas; offering to coordinate class seating arrangements; offering to provide an on campus escort; notifying faculty of no contact orders; relieving Mr. Alexander of his duties on law review; instructing Mr. Alexander to abstain from attending the bankruptcy class; and preventing Mr. Alexander from registering for any courses Ms. Mikolas was registered for in the Spring 2017 semester.  Defendant avers that on April 13, 2016, Ms. Mikolas emailed Dean Dodge and stated, "First of all, thank you for your help in getting through this semester.  Being able to take some time off classes saved me from dropping out, and I really appreciate your understanding and kindness, and the fact that you arranged to have my classes taped."

100.    Defendant admits that on August 22, 2016, Ms. Agidius emailed two law students regarding no contact orders, and informed the students that a no contact order was not in effect for either of them, and that a no contact order would not take effect until the conclusion of disciplinary process.  Defendant avers that the allegations contained in paragraph 100 do not pertain to any rights of Ms. Mikolas and therefore are irrelevant.  Defendant denies the remaining allegations contained in paragraph 100.

101.    Defendant denies the allegations in paragraph 101.  Defendant avers that the allegations in paragraph 101 do not pertain to any rights of Ms. Mikolas and therefore are irrelevant.

102.    Defendant admits that Ms. Agidius emailed Ms. Mikolas.  Defendant avers that Ms. Agidius emailed Ms. Mikolas on August 22, 2016, and stated, in part, "[I]t is my understanding that Student Conduct Coordinator Alex Roberts spoke with you regarding how the SDRB determination is not in effect until the review/appeal period has lapsed or, if a request for review is filed, the conclusion of the review.  Since Mr. Alexander has requested a review of the SDRB determination within the required time frame, the sanctions listed in the SDRB determination letter are not yet in effect."  Defendant avers that the no contact order issued by the Dean of Students' Office on February 26, 2016, at the beginning of the investigation remained in effect during the entire investigation and during the entire time the adjudication of the complaint was pending.  Defendant avers that any sanction issued by the SDRB which ordered no contact was separate and apart from the no contact order issued by the Dean of Students' Office at the beginning of the investigation.

103.    Defendant is without sufficient information or belief to either admit or deny that Ms. Mikolas checked the no contact order issued on February 26, 2016.  Defendant denies that the

**ANSWER TO FIRST AMENDED COMPLAINT - 28**

no contact order expired at the end of the investigation process in early April.  Defendant avers that the no contact order issued by the Dean of Students' Office on February 26, 2016, at the beginning of the investigation remained in effect during the entire investigation and during the entire time the adjudication of the complaint was pending.  Defendant avers that the no contact order did not expire in April 2016.  Defendant denies the remaining allegations in paragraph 103.

104.    Defendant denies that Ms. Agidius stated in the email to Ms. Mikolas that because of the overlap that existed between Ms. Mikolas's and Mr. Alexander's schedules, Dean Dodge had acted appropriately in coordinating to have the bankruptcy class recorded.  Defendant denies the remaining allegations in paragraph 104.

105.    Defendant admits that on August 23, 2016, Ms. Mikolas emailed Ms. Agidius a link to "knowyourix.org".  Defendant admits that Ms. Mikolas stated, "can [*sic*] you explain how Paul has shared the burden of accommodation to me?"  Defendant denies that the University failed to help or accommodate Ms. Mikolas.  Defendant is without sufficient information or belief to either admit or deny whether Ms. Mikolas was frustrated and therefore denies the same.  Defendant denies the link to "knowyourix.org" states "the burden of accommodations or safety measures should not be solely placed on the victim as this may be seen as a violation of Title IX".  Defendant denies the remaining allegations in paragraph 105.

106.    Defendant denies the allegations in paragraph 106.  Defendant avers that Ms. Agidius responded to the email from Ms. Mikolas referenced in paragraph 105, and stated, "I would be happy to meet with you and discuss with you any concerns you have.  Please let me know of a time that might work best for you should you wish to meet.  I recognize, however, that you have had concerns with the investigation, interim measures and overall process.  I wanted to share with you that you also have the option to file a complaint with the Office of Civil Rights

**ANSWER TO FIRST AMENDED COMPLAINT - 29**

against the University.  This complaint may even be filed prior to the conclusion of the institutional process."  Ms. Agidius provided the contact information for the district office of the OCR, and stated that she was, again, happy to meet with Ms. Mikolas to discuss her concerns further.

107.    Defendant admits that Mr. Roberts emailed Ms. Mikolas on August 5, 2016. Defendant denies that Mr. Roberts informed Ms. Mikolas of the panel members appointed to the Student Appeals Committee ("SAC").  Defendant avers that in the email Mr. Roberts stated, "You should've received the e-mail notification of the appointment of panelist [*sic*] to hear the appeal." Defendant avers that Mr. Roberts further stated, "I wanted you to know that there was a malfunction on one section (out of five) of our recording, and the missing part of it unfortunately included much your [*sic*] testimony.  It was an accident, my fault, and I have documented this for disclosure to the other side and to the Student Appeals Committee panelists.  Because the questions were written (mine too), I don't think this gap is a big deal."  Defendant admits that Mr. Roberts emailed Ms. Mikolas on August 12, 2016, and stated that he had just sent the DOS response to Mr. Alexander's petition for review to the SAC panelists.  Defendant denies the remaining allegations in paragraph 107.

108.    Defendant admits that Ms. Mikolas received the SAC decision on August 24, 2016. Defendant avers that the Student Appeal Committee issued a decision on August 24, 2016, which returned the disciplinary matter to the SDRB for reconsideration.  Defendant avers that the SAC based its decision on two procedural errors by the SDRB: (1) the SDRB did not hold a hearing within ten days, and (2) there was no showing of extenuating circumstances to justify the presentation of information by witnesses over the telephone.  Defendant denies the remaining allegations in paragraph 108.

**ANSWER TO FIRST AMENDED COMPLAINT - 30**

109.   Defendant denies the allegations in paragraph 109.  Defendant avers that students subject to the student disciplinary process have important rights under applicable law and policy that the University must observe, and Title IX complaints are investigated and processed in accordance with these rights.

110.   Defendant admits that Title IX requires a prompt and equitable resolution of complaints of sex discrimination.  Defendant admits that the appeals to the Student Appeals Committee, as part of the disciplinary proceedings stemming from Ms. Mikolas's complaint on February 23, 2016, were not resolved until September 26, 2016.  Defendant states that it was not present during the alleged sexual assault and is without sufficient information or belief to either admit or deny whether there was a "sexual assault" and therefore leaves Plaintiffs to their proof. Defendant denies the remaining allegations and implications in paragraph 110.

111.   Defendant is without sufficient information or belief to either admit or deny the allegations in paragraph 111 and therefore denies the same.

112.   Defendant admits that Mr. Roberts emailed Ms. Mikolas on August 25, 2016. Defendant avers that the remaining allegations in paragraph 112 do not accurately represent the statements made by Mr. Roberts in the email and therefore denies them.  Defendant avers that Mr. Roberts stated, "When you have a couple of minutes I'd like to talk with you about the next steps responding to the Student Appeals Committee (SAC) decision.  Suffice it to say I am very disappointed, and have a suggested approach I'd like to discuss with you."

113.   Defendant admits that the SDRB held a hearing on August 30, 2016.  Defendant admits that the SDRB panel permitted testimony from five law students.  Defendant admits that objections were raised regarding the testimony of the witnesses.  Defendant avers that each witness stated that they were not with Ms. Mikolas or Mr. Alexander on February 11th.  Defendant is

without sufficient information or belief to either admit or deny that the witnesses had been informed of the alleged sexual assault by Mr. Alexander's attorney.  Defendant admits that three of the witnesses generally provided information about Ms. Mikolas's behavior at school during the Spring 2016 semester.  Defendant denies the remaining allegations in paragraph 113.

114.    Defendant denies the allegations in paragraph 114.

115.    Defendant is without sufficient information or belief to either admit or deny the allegations in paragraph 115 and therefore denies the same.  Defendant avers that it cannot prevent a student from making comments on Facebook because, by doing so, Defendant could potentially violate a student's First Amendment rights.  Defendant denies the implication that it should have policed students' speech.

116.    Defendant admits that it did not require the witnesses at the student disciplinary hearings to maintain confidentiality.  Defendant denies the implication that student disciplinary hearings are confidential proceedings and the implication that Ms. Mikolas was led to believe that the student disciplinary hearing was a confidential proceeding.  Defendant denies the implication that permitting witnesses to provide information at a student disciplinary hearing is harassment. Defendant denies the remaining allegations in paragraph 116.  Defendant avers that allegations of sexual misconduct are subject to the same student disciplinary process as all other violations of the student code of conduct.  Defendant avers that students subject to the student disciplinary process have important rights under applicable law and policy that the University must observe.

117.    Defendant admits that Mr. Alexander was suspended from the University for a semester until January 2017.  Defendant denies the remaining allegations in paragraph 117. Defendant avers that students subject to the disciplinary process are not found "guilty".  Defendant avers that the student disciplinary process is not akin to the criminal justice system.

118.    Defendant admits the allegations in paragraph 118.

119.    Defendant is without sufficient information or belief to either admit or deny the allegations in paragraph 119 and therefore denies the same.  Defendant avers that it cannot prevent a student from making comments in class because, by doing so, Defendant could potentially violate a student's First Amendment rights.  Defendant denies the implication that it should have policed students' speech.

120.    Defendant admits that on September 26, 2016, the SAC upheld the August 30, 2016, decision of the SDRB panel.  Defendant admits that the SAC upheld the sanctions imposed by the SDRB panel and such sanctions were retroactively effective as of August 30, 2016. Defendant denies that the SDRB panel or the SAC found that Ms. Mikolas was sexually assaulted by Mr. Alexander.

121.    Defendant avers that Mr. Alexander requested review of the SAC decision of September 26, 2016, by the President of the University of Idaho.  Defendant avers that the President of the University of Idaho upheld the findings made by the SAC and the SDRB panel. Defendant denies the remaining allegations in paragraph 121.

122.    Defendant denies the allegations in paragraph 122.

123.    Defendant denies the allegations in paragraph 123.

124.    Defendant admits that Dean Dodge emailed Ms. Mikolas on November 2, 2016. Defendant avers that Dean Dodge stated in the email, "Registration for spring semester begins next week.  The Dean of Students Office is enforcing the no contact order with Paul into the future and that prevents his registration in any course you've enrolled in next semester."  Defendant denies the remaining allegations in paragraph 124.

125.    Defendant denies the allegations contained in paragraph 125.  Defendant avers that the University enforced the no contact orders between Ms. Mikolas and Mr. Alexander in accordance with the Notice of No Contact that was issued to each person on February 26, 2016. Defendant avers that the no contact order remained in effect during the entire investigation and during the entire time the adjudication of the complaint was pending.   Defendant avers that the no contact orders instructed Ms. Mikolas and Mr. Alexander to have no contact with each other, and that each person was prevented from contacting the other in any way and under any circumstances. Defendant avers that the no contact orders specifically advised each person not to call, text, approach, speak with, make any intent to communicate with in any form, and to not use social networking or third party means to contact the other.  Defendant avers that each person was advised to sit on opposite sides of the room in any shared classes.  Defendant avers that any sanction issued by the SDRB which ordered no contact was separate and apart from the no contact order issued by the Dean of Students' Office at the beginning of the investigation.

126.    Defendant admits that Dean Dodge emailed Ms. Mikolas on November 2, 2016. Defendant avers that this email communication is the same email communication referenced in paragraph 124.   Defendant avers that Dean Dodge stated, "The Dean of Students Office is enforcing the no contact order with Paul into the future and that prevents his registration in any courses you're enrolled in next semester.  He'll soon write me with his schedule and I'm writing to ask you about yours.  I've communicated that you have the right to change your schedule through the add/drop deadline next semester and he'll need to adjust."   Defendant denies the remaining allegations in paragraph 126 and avers that on August 26, 2016, the University instructed Mr. Alexander to not attend the bankruptcy class shared with Ms. Mikolas.

127.    Defendant denies the allegations in paragraph 127 and specifically denies that the University forced Ms. Mikolas to accommodate Mr. Alexander.

128.    Defendant admits that Ms. Mikolas completed a semester in practice for the Spring 2017 semester.  Defendant is without sufficient information or belief to either admit or deny the reason for Ms. Mikolas's decision to complete a semester in practice and therefore denies the same.  Defendant denies that the University failed to provide accommodations to Ms. Mikolas or failed to help Ms. Mikolas during the investigation and student disciplinary review process.  Defendant denies the remaining allegations in paragraph 128.

129.    Defendant is without sufficient information or belief to either admit or deny the allegations in paragraph 129 and therefore denies the same.

130.    Defendant avers that the allegations in paragraph 130 related to notice from the University are vague and ambiguous and therefore denies the same.   Defendant is without sufficient information to either admit or deny the remaining allegations in paragraph 129 and therefore denies the same.

131.    Defendant admits that the University did not inform Ms. Mikolas that Mr. Alexander would be attending the graduation ceremony.  Defendant denies any implication that it should have or was required to inform Ms. Mikolas that Mr. Alexander would be attending the ceremony.  Defendant is without sufficient information to either admit or deny the remaining allegations in paragraph 131 and therefore denies the same.

132.    Defendant is without sufficient information or belief to either admit or deny the allegations contained in paragraph 132 and therefore denies the same.

133.    Defendant admits that Plaintiff Sean Scoggin ("Mr. Scoggin") was previously employed by the University.  Defendant avers that it was not present during the alleged sexual

assault and is without sufficient information or belief to either admit or deny whether there was a "sexual assault" and therefore leaves Plaintiffs to their proof. Defendant further states that any alleged "sexual assault" which occurred off campus is not an educational program or activity over which the University has control and therefore denies any implication of wrongdoing.

134.     Defendant admits that Mr. Scoggin resigned from his position with the University and took a position with the City of Sandpoint. Defendant denies the allegation that the investigation and student disciplinary review process created a harmful working environment for Mr. Scoggin. Defendant denies that Mr. Scoggin resigned from his position with the University because of an allegedly harmful environment created by the University's treatment of Ms. Mikolas. Defendant avers that Mr. Scoggin was very open with his supervisors at the University about his desire to seek a position with a city government in order to use the Masters of Public Administration degree he received on May 12, 2017, from the University. Defendant avers that the reason Mr. Scoggin gave his supervisors for his resignation was that the position with the City of Sandpoint aligned with his career aspirations and the position was in an area in which he was academically prepared.

135.     Defendant denies the implication that the University forced Ms. Mikolas and Mr. Scoggin to seek employment elsewhere or move from Moscow. Defendant denies the remaining allegations in paragraph 135.

136.     Defendant denies the allegation that the University's actions caused Ms. Mikolas to seek counseling. Defendant is without sufficient information or belief to either admit or deny the remaining allegations in paragraph 136 and therefore denies the same.

137.     Defendant is without sufficient information or belief to either admit or deny the allegations in paragraph 137 and therefore denies the same.

138.    Defendant is without sufficient information or belief to either admit or deny the allegations in paragraph 138 and therefore denies the same.

139.    Defendant is without sufficient information or belief to either admit or deny the allegations in paragraph 139 and therefore denies the same.

140.    Defendant admits that in the report of psychological evaluation, Dr. Klein opined that, "Bethany Mikolas has suffered pervasive psychological injuries as a consequence of how she was treated by her Law School in response to a sexual assault perpetrated by a fellow law student." Defendant denies any implication that by admitting that Dr. Klein has opined on this matter, that it agrees with such opinion or the bases for such opinion.

141.    Defendant admits that in the report of psychological evaluation, Dr. Klein opined that, "Bethany has experienced intense anxiety and depression as a consequence of how her matter was handled, was responded to." Defendant denies any implication that by admitting that Dr. Klein has opined on this matter, that it agrees with such opinion or the bases for such opinion.

142.    Defendant admits that in the report of psychological evaluation, Dr. Klein stated, "I am recommending two years of weekly psychotherapy as appropriate for her situation." Defendant denies any implication that by admitting that Dr. Klein has made a recommendation on this matter that it agrees with such recommendation or the bases for such recommendation.

143.    The allegations in paragraph 143 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the Office of Civil Rights enforces several Federal civil rights laws, including Title IX of the Education Amendments of 1972, which prohibit discrimination in programs or activities that receive federal financial assistance from the Department of Education.

**ANSWER TO FIRST AMENDED COMPLAINT - 37**

144. The allegations in paragraph 144 contain legal conclusions to which no response is required. If a response is required, Defendant states that the OCR promulgated the "Dear Colleague Letter" in April 2011 which concerned Title IX's requirements related to student-on-student sexual harassment. Defendant further states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

145. The allegations in paragraph 145 contain legal conclusions to which no response is required. If a response is required, Defendant states that 20 U.S.C. § 1682 speaks for itself.

146. The allegations in paragraph 146 contain legal conclusions to which no response is required. If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

147. The allegations in paragraph 147 contain legal conclusions to which no response is required. If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

148. The allegations in paragraph 148 contain legal conclusions to which no response is required. If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

149. The allegations in paragraph 149 contain legal conclusions to which no response is required. If a response is required, Defendant states that the "Dear Colleague Letter" speaks for

itself.  Defendant further states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

150.    The allegations in paragraph 150 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

151.    The allegations in paragraph 151 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

152.    The allegations in paragraph 152 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

153.    The allegations in paragraph 153 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

154.    The allegations in paragraph 154 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

155.    The allegations in paragraph 155 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

156.    The allegations in paragraph 156 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

157.    The allegations in paragraph 157 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

158.    The allegations in paragraph 158 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

159.    The allegations in paragraph 159 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" speaks for itself.  Defendant further states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

160.    The allegations in paragraph 160 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" speaks for

itself.  Defendant further states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

161.    The allegations in paragraph 161 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" speaks for itself.  Defendant further states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

162.    The allegations in paragraph 162 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" speaks for itself.  Defendant further states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

163.    The allegations in paragraph 163 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" speaks for itself.  Defendant further states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

164.    The allegations in paragraph 164 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" speaks for itself.  Defendant further states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

165.    The allegations in paragraph 165 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" speaks for itself.  Defendant further states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

166.    The allegations in paragraph 166 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" speaks for itself.  Defendant further states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

167.    The allegations in paragraph 167 contain legal conclusions to which no response is required.  If a response is required, Defendant states that the "Dear Colleague Letter" did not add requirements to applicable law and was rescinded by the Department of Education on September 22, 2017.

## FIRST CAUSE OF ACTION – MS. MIKOLAS

## VIOLATION OF TITLE IX – 20 U.S.C. § 1681 (DISCRIMINATION ON THE BASIS OF GENDER/HOSTILE EDUCATIONAL ENVIRONMENT)

168.    Defendant realleges and incorporates by reference the above paragraphs as if fully set forth herein.

169.    Defendant admits the allegations in paragraph 169.

170.    Defendant admits the allegations in paragraph 170.

171.    Defendant denies the allegations in paragraph 171.  Defendant states that it was not present during the alleged sexual assault and is without sufficient information or belief to either admit or deny whether there was a "sexual assault" and therefore leaves Plaintiffs to their proof. Defendant further states that any alleged "sexual assault" which occurred off campus is not an educational program or activity over which the University has control and therefore denies any implication of wrongdoing.

172.    Defendant denies the allegations in paragraph 172.

173.    Defendant denies the allegations in paragraph 173.

174.    Defendant denies the allegations in paragraph 174.

175.     Defendant denies the allegations in paragraph 175.

176.     Defendant denies the allegations in paragraph 176.

## SECOND CAUSE OF ACTION – MS. MIKOLAS

## VIOLATION OF TITLE IX – 20 U.S.C. § 1681 (DISCRIMINATION ON THE BASIS OF GENDER/FAILURE TO ACCOMMODATE)

177.     Defendant realleges and incorporates by reference the above paragraphs as if fully set forth herein.

178.     Defendant admits the allegations in paragraph 178.

179.     Defendant admits the allegations in paragraph 179.

180.     Defendant denies the allegations in paragraph 180.  Defendant states that it was not present during the alleged sexual assault and is without sufficient information or belief to either admit or deny whether there was a "sexual assault" and therefore leaves Plaintiffs to their proof. Defendant further states that any alleged "sexual assault" which occurred off campus is not an educational program or activity over which the University has control and therefore denies any implication of wrongdoing.

181.     Defendant denies the allegations in paragraph 181.

182.     The allegations in paragraph 182 contain legal conclusions to which no response is required.  If a response is required, Defendant denies the allegations in paragraph 182.

183.     Defendant denies the allegations in paragraph 183.

184.     Defendant denies the allegations in paragraph 184.

## THIRD CAUSE OF ACTION – MS. MIKOLAS

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

185.     Defendant realleges and incorporates by reference the above paragraphs as if fully set forth herein.

186.    Defendant denies the allegations in paragraph 186.

187.    Defendant denies the allegations in paragraph 187.

188.    Defendant denies the allegations in paragraph 188.

189.    Defendant denies the allegations in paragraph 189.

## FOURTH CAUSE OF ACTION – MS. MIKOLAS

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

190.    Defendant realleges and incorporates by reference the above paragraphs as if fully set forth herein.

191.    Defendant admits the allegations in paragraph 191.

192.    Defendant denies the allegations in paragraph 192.

193.    Defendant denies the allegations in paragraph 193.

194.    Defendant denies the allegations in paragraph 194.

195.    Defendant denies the allegations in paragraph 195.

196.    Defendant denies the allegations in paragraph 196.

## FIFTH CAUSE OF ACTION – MS. MIKOLAS

## NEGLIGENCE

197.    Defendant realleges and incorporates by reference the above paragraphs as if fully set forth herein.

198.    Defendant denies the allegations in paragraph 198.

199.    Defendant denies the allegations in paragraph 199.

200.    Defendant denies the allegations in paragraph 200.

## SIXTH CAUSE OF ACTION – MR. SCOGGIN

## LOSS OF CONSORTIUM

201.     Defendant realleges and incorporates by reference the above paragraphs as if fully set forth herein.

202.     Defendant denies the allegations in paragraph 202.

### AFFIRMATIVE DEFENSES

A.     Pursuant to the Eleventh Amendment, Defendant is immune from suit in this forum for state law claims.

B.     Plaintiffs' First Amended Complaint fails to state a claim upon which relief may be granted.

C.     The alleged actions or inactions of Defendant, if any, do not rise to the level of a deprivation of a statutory right.  By asserting this defense, Defendant does not admit to any wrongdoing, but denies the same unless herein specifically and expressly admitted.

D.     Any and all conduct on the part of Defendant with respect to the matters alleged in Plaintiffs' First Amended Complaint was lawful, justifiable and performed in good faith and with the belief that such acts were proper and appropriate.

E.     Discovery, investigation and research may show that Plaintiffs have failed to mitigate their damages.

F.     Plaintiffs' damages, if any, were proximately caused in whole or in part by the acts or omissions of others for whose conduct or negligence Defendant is not responsible.

G.     Plaintiffs' claims are barred as a matter of law because the First Amended Complaint makes numerous blatantly false claims.

**ANSWER TO FIRST AMENDED COMPLAINT - 45**

H.      Pursuant to Idaho Code § 6-904(1), Defendant is not liable for any of the claims alleged by Plaintiffs because any of the alleged actions of Defendant were based upon the performance of a discretionary function.

Whereas discovery is just beginning, Defendant reserves the right to modify and amend its Answer to the First Amended Complaint and Affirmative Defenses.

## PRAYER FOR RELIEF

WHEREFORE, having answered Plaintiffs' First Amended Complaint, Defendant prays for relief as follows:

1.      That Plaintiffs' First Amended Complaint be dismissed with prejudice and that Plaintiffs recover nothing;

2.      That Defendant be awarded its costs of suit and reasonable attorneys' fees incurred in defending this action; and

3.      That Defendant be awarded such other and further relief as the court deems just and equitable.

DATED this 15th day of December, 2017.

LAKE CITY LAW GROUP PLLC


_____/s/_____
PETER C. ERBLAND
Attorney for Defendant

**ANSWER TO FIRST AMENDED COMPLAINT - 46**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the <u>15th</u> day of December, 2017, I filed the foregoing electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Attorneys for Plaintiffs:

Troy Y. Nelson
Brook L. Cunningham                            ☒  Email: tyn@randalldanskin.com
RANDALL | DANSKIN, P.S.                    ☒  Email: blc@randalldanskin.com
601 W. Riverside Avenue, Ste. 1500
Spokane, WA 99201-0653


　　　　　　　　　　　　　 /s/ 　　　　　　　　　　　　
　　　　　　　　　　　Nicky Hastings


W:\CDADOCS\04298\00001\PLEAD\C267816.DOCX

**ANSWER TO FIRST AMENDED COMPLAINT - 47**