LAWRENCE G. WASDEN
Attorney General
State of Idaho
Office of the Attorney General

PETER C. ERBLAND, ISBA #2456
perbland@lclattorneys.com
KATHARINE B. BRERETON, ISBA #9583
kbrereton@lclattorneys.com
LAKE CITY LAW GROUP PLLC
435 W. Hanley Avenue, Suite 101
Coeur d'Alene, ID 83815
Telephone: (208) 664-8115
Facsimile: (208) 664-6338

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BETHANY MIKOLAS, an individual, | Case No: 2:17-cv-00426-REB |
| Plaintiff, | **DECLARATION OF ERIN AGIDIUS** |
| vs. | |
| UNIVERSITY OF IDAHO, a public university, | |
| Defendant. | |

Erin Agidius states:

1. I make this declaration based on my own personal knowledge and as a representative of the University of Idaho.

2. I am the Director of the Office of Civil Rights and Investigations ("OCRI") for the University of Idaho, a position I have held since August 2016. I am also the University's Title IX Coordinator. In that capacity, I am responsible for Title IX compliance in matters involving faculty, staff, and students, including training, education and investigation of complaints.

**DECLARATION OF ERIN AGIDIUS - 1**

3. I earned a Bachelor's degree in Justice Studies from the University of Idaho in 2008, and a J.D. from the University of Idaho College of Law in 2011. I was admitted to the Idaho State Bar in 2013.

4. I served as the University of Idaho Coordinator for Student Conduct and Community Standards from 2012 to 2014. In that position, I coordinated elements of the student conduct system, including conducting Title IX investigations and all student Title IX adjudications.

5. In August 2014, I became Associate Director of Human Rights Access and Inclusion ("HRAI"). I was responsible for policy and program development and implementation; oversight of the recruitment and hiring process; and serving as deputy Affirmative Action and Equal Employment Opportunity coordinator, deputy Title IX coordinator, and deputy ADA coordinator. I was also the lead complaint resolution officer for discrimination, harassment and retaliation complaints.

6. I served as Interim Director of HRAI from August 2015 to August 2016. In August 2016, pursuant to a university reorganization, HRAI ceased to exist, and its functions were reassigned to other departments and offices at the University. At the same time, the University created the OCRI, and I became Director of OCRI.

7. I am a Level 3 trained Title IX investigator through the Association of Title IX Administrators (ATIXA). I am also a Level 1 trained coordinator through ATIXA. I have taken at least 350 hours of continuing education in Title IX and related issues, including in-person trainings and webinars.

8. I conduct trainings on Title IX and related matters for the University of Idaho as well as other institutions. I have conducted Title IX investigator training for Dakota State

DECLARATION OF ERIN AGIDIUS - 2

University in 2016, and a multi-institution training in South Dakota in 2017. I have conducted sexual harassment training for Potlatch 1 Federal Credit Union every year for the last three years. At the University of Idaho, I provide annual training for the University's student conduct boards. I also provided three annual trainings for the University's team of approximately 17 Title IX volunteer investigators, prior to the switch to full-time investigators.

9. As part of my duties as Director of OCRI, and previously as Interim Director of HRAI, I oversee the retention of records of the investigations conducted by OCRI, and previously by HRAI. As such, I am a custodian of the investigation records conducted by HRAI and OCRI for the University of Idaho. HRAI and OCRI keeps records of the investigations as part of its regularly conducted activity, and making the records is a regular practice of the investigatory process conducted by HRAI and OCRI.

10. On February 16, 2016, Jeffrey Dodge, Associate Dean of Students for the College of Law, informed me about his meeting with Bethany Mikolas.

11. On February 23, 2016, Dodge emailed me the report from his intake interview with Mikolas and the text messages he had gathered regarding an alleged sexual assault by a fellow law student ("the Student"). Dodge, as a volunteer Title IX investigator and Deputy Title IX Coordinator, thus began the investigative process through this intake interview. The report from Dodge's intake interview and the text messages are included in the records of the investigation conducted by HRAI into the report made by Mikolas.

12. On February 24, 2016, I was made aware of conflicts that had occurred between the Student and other students on the law review. Based on this information and the report made by Mikolas, the Student was suspended from his responsibilities on the law review. The Student's suspension from his responsibilities on law review meant that he could not attend any law review

DECLARATION OF ERIN AGIDIUS - 3

related meetings, sessions, or events until the conclusion of the investigation and outcome was determined.

13. On February 26, 2016, the Dean of Students office issued a Notice of Alleged Violation & Investigation (the "Notice") and an Official Notice of No Contact to the Student (the "Respondent No Contact Order"), as well as a reciprocal Official Notice of No Contact to Mikolas (the "Complainant No Contact Order"). These documents were signed by Alex Roberts, Coordinator of Student Conduct and Community Standards with the Office of the Dean of Students, but the HRAI office sent them to Mikolas and the Student.

14. The Notice included a directive to the Student that he had "been removed from [his] responsibilities on the Idaho Law Review pending the outcome of the investigation."

15. Attached hereto as Exhibit 2 is a true and correct copy of the Notice of Alleged Violation & Investigation sent to the Student. Attached hereto as Exhibit 3 is a true and correct copy of the Respondent No Contact Order issued to the Student. Attached hereto as Exhibit 4 is a true and correct copy of the Complainant No Contact Order issued to Mikolas. These exhibits are redacted to comply with the Family Educational Rights and Privacy Act.

16. I assigned volunteer investigators Jessica Atkins, the Director of NCAA Compliance and Eligibility and the Senior Woman Administrator for the athletics department, and Scott Gove, Resident Director of University Apartments, to investigate the matter reported by Mikolas. I had originally assigned it to another investigator, but reassigned it to Atkins and Gove because of the original investigator's workload. At the time, the University employed only one full time Title IX investigator and all other investigators were employees of the University who volunteered as Title IX investigators. Neither Atkins nor Gove were full time investigators.

17. My responsibilities regarding Title IX investigations include overseeing investigations and coordinating the work of our investigators through weekly meetings during which I am apprised of their actions and guide the process of the investigation.

18. On March 7, 2016, I informed Mikolas that the University aimed to complete investigations within 60 days, but that delays, like academic holidays, could occur which could extend the timeline. I advised Mikolas to contact me if she had any questions about the process or concerns.

19. The Student submitted a statement to Alex Roberts, the Coordinator for Student Conduct and Community Standards in the Dean of Students office, which Roberts forwarded to me on March 15, 2016. The Student claimed that Mikolas initiated the sexual contact and that any contact was consensual.

20. The statement from the Student highlighted the main issue that the investigators had to attempted to resolve: whether the sexual contact was consensual. The resolution of this issue primarily rested upon a credibility determination, wherein the investigators had to determine whether Mikolas's or the Student's version of events was more credible.

21. I am aware that at the time of this incident, Mikolas lived at 643 N. Garfield St, in Moscow, Idaho, and that the incident occurred at that house. That address is not on the University of Idaho campus and the University has no control over that residence.

22. On March 22, 2016, I emailed Mikolas and provided the contact information for the investigators and informed her that the investigation was ongoing.

23. I was kept informed by Atkins and Gove of their progress with the investigation. I was made aware of when they interviewed the Student, Mikolas, and other witnesses, and the general nature of what they learned from their interviews.

DECLARATION OF ERIN AGIDIUS - 5

24. On March 23, 2016, the investigators met with the Student.

25. On March 28, 2016, Mikolas emailed Atkins, Gove, Dodge, and me and expressed that she was concerned about learning that the Student's attorney had allegedly contacted a friend of hers. On March 29, 2016, I emailed Mikolas and informed her that the Student's attorney did not work for the University and provided her with information for the Counseling & Testing Center and the Women's Center on campus. I also offered to meet with her to discuss her concerns.

26. On March 30, 2016, I met with Mikolas and her then-fiancé Sean Scoggins. Mikolas advised me that she was concerned about the Student's attorney's involvement and her perception that her privacy had been violated by him. Mikolas advised that it was uncomfortable that her and the Student's study carrels were in close proximity to each other, and that she believed the Student was intentionally standing at the entrance to the law school building smoking when she was coming and going.

27. That same day, I instructed the Student to select an alternate location when he took a smoke break to minimize the non-verbal interaction with Mikolas and any inadvertent contact that could result in a violation of the no contact order.

28. I followed up with Mikolas after our meeting. I notified Mikolas that I had instructed the Student to find an alternate smoking location and confirmed that the Student was currently suspended from law review. I informed Mikolas that I had inquired about the availability of teleconferencing for classes, but the classes on the Boise campus were not covering the course material in the same order. I noted that I had learned that if Mikolas desired to transfer to the Boise campus, a spot could be made available to her, despite the passing deadline. I stressed to Mikolas that this was information only and there was no expectation that she should make this change. I also offered to assist Mikolas with relocating her study carrel, if she desired. Finally, I addressed

DECLARATION OF ERIN AGIDIUS - 6

Mikolas's concern about the Student's attorney. I advised that harassing or intimidating a person participating in an investigation, disrupting or interfering with an investigation, discouraging participation or retaliating against a person participating in an investigation were possible violations of the student code of conduct, but contacting potential factual witnesses, by itself, was unlikely to constitute a violation.

29.     On April 4, 2016, I was informed that the Student requested that the investigators interview two other law students as part of their investigation. It was determined that these two students should not be interviewed because they were offered as character witnesses for the Student and not witnesses with knowledge about the alleged assault or events surrounding the alleged assault.

30.     The HRAI office completed its preliminary investigation report by April 7, 2016. Atkins, Gove, the DOS full time investigator, and I jointly revised the report to clear up any outstanding questions and determinations. While the HRAI office was working to finalize the investigative report, Atkins and I consulted about a witness Mikolas had discussed during her interview with the investigators and whether this witness should be interviewed. It was determined that the witness should be interviewed. HRAI completed its investigation on or about April 22, 2016. The investigative report was finalized and provided to the Dean of Students office.

31.     On August 18, 2016, Dodge reached out to me and Alex Roberts to get an update on the appeals process and solicit our advice with respect to Mikolas's insistence that the Student not be enrolled in a bankruptcy class in which she was also enrolled for the fall 2016 semester. I discussed the situation with several other University officials, and we collectively reached the conclusion that the University could not prevent the Student from being enrolled in the bankruptcy class since the appeals process had not been concluded.

32. Dodge kept me informed of his communications with Mikolas concerning the bankruptcy class. I understood that Mikolas was dissatisfied with the accommodations offered by Dodge. Because I was aware of Mikolas's concerns with the offered accommodations for the bankruptcy class, I reached out to Ms. Mikolas on multiple occasions and offered to meet to discuss her concerns.

33. I conferred with Blaine Eckles and other University officials about what options the University had to accommodate Mikolas's request and address her dissatisfaction with the offered accommodations for the bankruptcy class during the pendency of the disciplinary process.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury pursuant to the laws of the state of Idaho, that the foregoing is true and correct.

DATED this 20 day of May, 2019.

_____
ERIN AGIDIUS

DECLARATION OF ERIN AGIDIUS - 9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _____ day of May, 2019, I filed the foregoing electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Attorneys for Plaintiffs:

Brook L. Cunningham  ☑ Email: blc@randalldanskin.com
Shamus T. O'Doherty                    sto@randalldanskin.com
RANDAL | DANSKIN, P.S.
601 W. Riverside Ave., Suite 1500
Spokane, WA  99201-0653


/s/ Nicky Hastings
Nicky Hastings

**EXHIBIT 2**

University *of* Idaho

Office of the Dean of Students

Friday, February 26, 2016

Teaching and Learning Center (TLC) 232
PO Box 442431
Moscow ID 83844-2431

Phone: 208-885-6757
Fax: 208-885-9494
askjoe@uidaho.edu
www.uidaho.edu/dos

@vandals.uidaho.edu

Sent via email

## NOTICE OF ALLEGED VIOLATION & INVESTIGATION

Dear Mr.

On February 24, 2016, the Dean of Students Office ("DOS") received a report alleging that you violated the University of Idaho's Student Code of Conduct ("Code"). The alleged incident occurred on or about February 11, 2016, when according to the report, you engaged in the following behavior towards the Complainant, Bethany Mikolas:

> Attempting to engage in sexual contact without consent; and using obscene language that may be a gender bias towards students whom you supervise, and repeating this behavior after a warning from Dean Seamon.

Until the investigation has concluded, you have been removed from your responsibilities on the Idaho Law Review pending the outcome of the investigation.

Your alleged behavior, if true, would be a violation of the following provisions of the Code:

FSH 2300, Article II, A-3, b. and/or d.

A-3. Threat of Harm or Actual Harm to a Person's Physical or Mental Health or Safety. Living together in a University community requires respect for the rights of fellow members of that community to pursue their academic goals and to participate in lawful campus or University activities. As in any community, certain forms of responsible conduct must be adhered to in order to ensure the physical functioning and safety or security of that community.

> a. Physical violence of any nature against any person, on or off campus. Physical violence includes, but is not limited to, (i) fighting; (ii) assault; (iii) battery; (iv) the use of a knife, gun, or other weapon except in reasonable self-defense; (v) physical abuse; (vi) restraining or transporting someone against his/her will; or (vii) any action that threatens or endangers the physical health or safety of any person or causes reasonable apprehension of such harm.

> b. Persistent or severe, verbal abuse, threats, intimidation, harassment, coercion, bullying, derogatory comments, vandalism, or other conduct that threatens or endangers the mental or physical health or safety of any person or causes reasonable apprehension of such harm. A single instance may be considered severe enough to merit sanctions.

> c. Hazing, which includes, but is not limited to, any action or participation in any activity that (i) causes or intends to cause physical or mental discomfort or distress, (ii) may demean any person, regardless of location, intent or consent of participants, or (iii) destroys or removes

      public or private property, for the purpose of initiation, admission into, affiliation with, or as a condition for continued membership in, a group or organization. The express or implied consent of the victim will not be a defense. Apathy or acquiescence in the presence of hazing are not neutral acts; they are also violations of this rule.

      d. Sexual misconduct, which is a broad term encompassing any non-consensual contact of a sexual nature (see Article I, Section A-1, for the definition of consent). Sexual misconduct may vary in severity, and consists of a range of behavior or attempted behavior including, but not limited to, the following examples of prohibited conduct (see APM 95.20 for more information about resources available and procedures for responding to sexual misconduct): *[…]*

If consent is applicable to the alleged violation, please refer to FSH 2300, Article I, A-1, for the Code's definition of consent.

The University of Idaho takes such allegations very seriously and this office is charged with conducting a thorough investigation to determine whether the alleged behaviors more likely than not occurred, and if so, whether there is a violation of the Code.

As part of the University's investigation process, which is described in FSH 2400, C-1, DOS (or Title IX investigators) will investigate alleged violations of the Code. The investigators will reach out to you to schedule a time to meet with you and discuss the allegations.

You are not required to speak with me (or the Title IX investigators). If you choose to speak with me (or the Title IX investigators), you may have an advisor present with you during any meetings and throughout the student conduct process. An advisor is available, at no cost to you, from the ASUI Student Defender program (if interested, please contact asui-defender@uidaho.edu or 208-885-6331). You may also select the person of your choice to be your advisor; however, you are solely responsible for any costs associated with an advisor other than one from the ASUI Student Defender program. Additionally, please be aware that your advisor must make him/herself available to attend any scheduled meetings, because advisor availability is not considered in scheduling meetings.

If you choose to not attend the scheduled meeting, and do not contact me to schedule before the meeting time (alexroberts@uidaho.edu or 208-885-6757), I will presume that you have exercised your right to not speak with me. However, the student conduct process will proceed regardless of whether you choose to speak with me, pursuant to University policy.

As part of the investigation process, all witnesses and parties will be asked to protect the confidentiality of matters pertaining to this investigation, including the fact than an investigation is being conducted.

It is a violation of the Code for any student involved in this process to engage in any retaliatory conduct, which includes conduct that intimidates, threatens, coerces, or retaliates against any individual associated with this investigation. For this reason, you are to have **NO CONTACT** with the Complainant. You are directed to not call or text, approach, attempt to speak with or make any intent to communicate with the Complainant in any form. This includes doing any of the above through the use of social networking or other websites, or through any third parties. Likewise, the Complainant will be directed to not have any form of contact with you.

The primary University policies implicated in this investigation are Faculty Staff Handbook ("FSH") 2300 (Code of Conduct), and FSH 2400 (Disciplinary Process). However, Chapter 2 of the FSH contains other relevant Student Affairs Policies. I encourage you to review these policies, as they outline your rights and responsibilities in the student conduct process.

Investigations of this nature can be stressful. One resource that is available to you, free of charge, is the University's Counseling and Testing Center, where you can confidentially speak with a licensed counselor. Below is the contact information.

Counseling and Testing Center:
http://www.uidaho.edu/CTC
208-885-6716
Sincerely,

*Alex L. Roberts*

Alex L. Roberts.
Coordinator of Student Conduct & Community Standards

**EXHIBIT 3**

# University of Idaho

**Office of the Dean of Students**

Teaching and Learning Center (TLC) 232
PO Box 442431
Moscow ID 83844-2431

Phone: 208-885-6757
Fax: 208-885-9494
askjoe@uidaho.edu
www.uidaho.edu/dos

February 26, 2016


@vandals.uidaho.edu
Moscow, ID 83843

RE: OFFICIAL NOTICE OF NO CONTACT
COMMUNICATION SENT ELECTRONICALLY VIA EMAIL

Dear Mr.

This letter is concerning Bethany Mikolas and her report that you sexually assaulted her by engaging in sexual contact without her consent. Pending the completion of the investigation, you are to have no contact with Ms. Mikolas. This is an administrative action through the Dean of Students Office.

As of February 26, 2016, you are hereby notified that you are prohibited from contacting Ms. Mikolas in any way. You are not to attempt to contact Ms. Mikolas under any circumstances. You are not to call or text Ms. Mikolas; you are not to approach her, attempt to speak with her, or make any intent to communicate with her in any form. You are also not to use social networking sites, or any form of third party means to contact her.

During any courses you have with Ms. Mikolas, you are instructed to sit on opposite sides of the room. Please contact me directly, and prior to any contact whatsoever, if you have any need to have conversation or interaction. Said interaction shall pertain only to relevant academic work being discussed.

If you are found in violation of any of these provisions outlined in this document further disciplinary action can be taken.

Sincerely,

*Alex L. Roberts*

Alex L. Roberts,
Coordinator for Student Conduct and Community Standards

cc: file

EXHIBIT 4

# University of Idaho

Office of the Dean of Students

Teaching and Learning Center (TLC) 232
PO Box 442431
Moscow ID 83844-2431

Phone: 208-885-6757
Fax: 208-885-9494
askjoe@uidaho.edu
www.uidaho.edu/dos

February 26, 2016

Bethany Mikolas
Miko4236@vandals.uidaho.edu
Moscow, ID 83843

RE: OFFICIAL NOTICE OF NO CONTACT
COMMUNICATION SENT ELECTRONICALLY VIA EMAIL

Dear Ms. Mikolas,

This letter is concerning the report you made against ████████ that he sexually assaulted you by engaging in sexual contact without your consent. Pending the completion of the investigation, Mr. ████████ has been instructed to have no contact with you through any form or medium. This is an administrative action through the Dean of Students Office.

Conversely, you are instructed to have not contact with Mr. ████████ either. As of February 26, 2016, you are hereby notified that you are prohibited from contacting Mr. ████████ in any way. You are not to attempt to contact Mr. ████████ under any circumstances. You are not to call or text Mr. ████████; you are not to approach him, attempt to speak with him, or make any intent to communicate with him in any form. You are also not to use social networking sites, or any form of third party means to contact him.

During any courses you have with Mr. ████████ you are instructed to sit on opposite sides of the room. Please contact me directly, and prior to any contact whatsoever, if you have any need to have conversation or interaction. Said interaction shall pertain only to relevant academic work being discussed.

If you or he are found in violation of any of these provisions outlined in this document further disciplinary action can be taken.

Sincerely,

*Alex L. Roberts*

Alex L. Roberts,
Coordinator for Student Conduct and Community Standards

cc: file