PETER C. ERBLAND, ISBA #2456
perbland@lclattorneys.com
KATHARINE B. BRERETON, ISBA #9583
kbrereton@lclattorneys.com
LAKE CITY LAW GROUP PLLC
435 W. Hanley Avenue, Suite 101
Coeur d'Alene, ID  83815
Telephone: (208) 664-8115
Facsimile: (208) 664-6338

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| BETHANY MIKOLAS and SEAN SCOGGIN, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF IDAHO, a public university,<br><br>Defendant. | Case No:  2:17-cv-00426-EJL<br><br>**DEFENDANT'S OBJECTIONS TO MATERIALS CITED BY PLAINTIFF IN OPPOSITION TO SUMMARY JUDGMENT** |

Defendant, University of Idaho, pursuant to Fed. R. Civ. P. 56(c)(2) hereby makes the following objections to certain materials cited by plaintiff in Plaintiff's Statement of Material Facts in Support of Opposition to Defendant's Motion for Summary Judgment.  In making these objections, reference will be made to specific paragraphs of plaintiff's Statement and cited deposition testimony, demonstrating that such material would be inadmissible at trial for the reasons stated.

### Paragraph 6

"The delays were the result of UI being understaffed, having a lack of resources, a model that was not ideal, and receiving over one-hundred Title IX Complaints each year."  This statement

is a conclusory argument and not factually based evidence. (O'Doherty Decl., Ex. D (hereinafter "Agidius 30(b)(6) Dep."), 205:4-8; O'Doherty Decl., Ex. E (hereinafter "Agidius Dep.")., 60:22-61:1; 62:4-10; 65:4-9; O'Doherty Decl., Ex. F (hereinafter "Roberts Dep."), 29:2-9; 90:11-14; O'Doherty Decl., Ex. G (hereinafter "Atkins Dep."), 19:23-25)

**Paragraph 7**

"UI employee Alex Roberts . . ."  Mr. Roberts was not an employee of the University at the time his deposition was taken, and therefore was not in a position to speak for or bind the University. (Roberts Dep., 91:15-19; 130:21-25)

**Paragraph 8**

"In August 2016, UI made drastic changes to its Title IX investigation and adjudication structure . . ." This statement is a conclusory argument and not factually based evidence. (Agidius 30(b)(6) Dep., 33:11-34:9; 39:25-40:5; 42:23-43:4; 44:21-45:22; 46:3-6, 14-18; 48:16-20, 22-23; 51:22-25; 119:11-122:9; 161:22-162:7; 163:12-15; Agidius Dep., 19:20-21; 62:17-63:5; 64:11-14; 195:18-21; Dodge Dep., 24:12-14; 25:10-16; O'Doherty Decl., Ex. H (hereinafter "Eckles 30(b)(6) Dep."), 32:16-22; 33:25-34:2, 8-15; 43:11-44:7; 44:19-46:8)

**Paragraph 9**

"UI tells victims the Title IX process is confidential and private, . . ."  This statement misstates the cited testimony of Ms. Agidius, who actually testified to the distinction between confidentiality and privacy in the cited deposition testimony. (Agidius 30(b)(6) Dep., 166:22-167:10; Agidius Dep., 108:8-15)

**Paragraph 11**

"When Bethany reported her sexual assault to Dean Dodge he expressed to her that the Title IX process would be private and confidential . . ."  This statement misstates the cited

testimony of Dean Dodge, who testified that the University would keep the matter "private." (Dodge Dep., 91:7-25; 98:9-11; Agidius Dep., 114:12-24; Mikolas Dep., 58:21-59:8; 79:2-9; 113:10-14)

**Paragraph 13**

UI testified the substance of the Title IX Complaint will not be disclosed to students and faculty, and that any student interviewed is instructed not to share the information with other students and is read a script on confidentiality." This statement misstates the cited testimony of Ms. Agidius, who specifically distinguished between the concepts of "privacy" and "confidentiality." The cited testimony does not support the assertion that students were instructed not to share information with other students. (Agidius 30(b)(6) Dep., 168:19-23; 174:5-9; Agidius Dep., 106:10-14; 106:23-107:2; 107:23-108:7; 109:17-22; 110:14-111:8)

**Paragraph 17**

"The promises to Bethany of privacy and confidentiality were destroyed when the perpetrator's attorney, acting on his behalf, contacted multiple law students about the sexual assault, allowing the information to be shared with the general law school population." This statement contains inadmissible hearsay and improperly implies that a private attorney's actions are attributable to the University. (Agidius Dep., 112:20-113:4)

**Paragraph 19**

"On March 28, 2016, Bethany emailed Title IX Coordinator Agidius, among others, stating she was very concerned her friends were being contacted and questioned by the perpetrator's attorney, and that she had been assured the process would be private and confidential which played into her decision to report the assault." This statement contains inadmissible hearsay and

improperly implies that a private attorney's actions are attributable to the University. (Agidius 30(b)(6) Dep., 182:1-7; Agidius Dep., 118:16-24; O'Doherty Decl., Ex. J, March 28, 2016 email)

**Paragraph 20**

"UI investigator Jessica Atkins ("Atkins"), responded that she was "very concerned" with the attorney's behavior, stating it bordered on retaliation and was being done to make Bethany feel vulnerable."  This statement contains inadmissible hearsay and improperly implies that a private attorney's actions are attributable to the University. (Atkins Dep., 83:1-21; 84:13-25; O'Doherty Decl., Ex. J, Mach 28, 2016 email)

**Paragraph 22**

". . . Roberts agreed with Bethany's concerns and stated the assailant's attorney is 'out of control.'"  This statement contains inadmissible hearsay and improperly implies that a private attorney's actions are attributable to the University. (Atkins Dep., 83:1-21; 84:13-25; O'Doherty Decl., Ex. J, Mach 28, 2016 email)

**Parargraph 24**

". . . Agidius dismissed the confidentiality and privacy concerns . . ."  This statement is speculative argument and not supported by the cited testimony of Ms. Agidius.  The statement also improperly implies that the University had the ability to direct or control any private attorney representing a client accused of misconduct. (Agidius 30(b)(6) Dep., 173:8-16; 174:10-22; 183:6-16; 185:11-16; Agidius Dep., 181:18-182:2, 20-22)

**Paragraph 25**

"Roberts and Atkins testified that if the assailant had been contacting students in the manner his attorney was it would have been a violation of the student code of conduct."  The statement is argumentative and improperly implies that the University had the ability to control

the actions of a private attorney in the representation of a client who had been accused of misconduct. Additionally, Mr. Roberts and Ms. Agidius were not employees of the University when their depositions were taken. (Roberts Dep., 80:11-14; Atkins Dep., 74:24-75:11) (Roberts Decl., ¶ 2; Brereton Decl., Ex. C, 5:7-8.)

**Paragraphs 26 and 27**

These statements also improperly imply that the University had the ability to control the conduct of a private attorney and interview any potential witnesses in the representation of a client who had been accused of misconduct. (Atkins Dep., 73:2-6; 87:18-25; Agidius 30(b)(6) Dep., 188:2-189:3; 190:7-9)

**Paragraph 29**

"The assailant's friends raised hypotheticals in classes with Bethany about men being falsely accused . . . and posted about the matter on Facebook . . ." The statements are hearsay and improperly attempt to attribute actions or statements made by students to the University itself. Mr. Scoggin is not competent to testify as to whether or not plaintiff was harassed or retaliated against. (Mikolas Dep., 234:4-11; Scoggin Dep., 102:3-16; 103:6-10; 119:12-23)

**Paragraph 30**

"UI testified that the Title IX process is an administrative process which it has complete control over." This statement misstates the cited testimony of Ms. Agidius and improperly implies that the University has the ability to control a private attorney in the representation of a client who has been accused of misconduct. (Agidius 30(b)(6) Dep., 174:23-175:9; Agidius Dep., 115:15-19)

**Paragraph 33**

"In 2016, UI faculty did not know who was responsible for accommodation decisions. . . ." The statements contained in this paragraph misstate the cited testimony of Mr. Dodge, Mr.

Roberts, and Ms. Agidius, who emphasized the collaborative and collegial nature of arriving at appropriate accommodations. (Dodge Dep., at 60:23-62:19; 138:12-18; 203:20-25; 270:21-271:3; Roberts Dep., 61:16-19; Agidius 30(b)(6) Dep., 69:17-23; Agidius Dep., 80:23-81:7, 18-23; 83:3-6; 211:12-18)

**Paragraph 34**

"UI does not provide specific training to its employees on providing interim accommodations to the victims during the Title IX process." This statement misstates Agidius's complete testimony.  (Agidius 30(b)(6) Dep., 132:23-133:6, 15-18)  See O'Doherty Decl., Ex. C, 36:10 – 38:23, 83:14 – 84:20; Ex. D, 47:16 – 48:15, 129:24 – 133:25, 191:25 – 196:19; Ex. E, 36:3-9, 38:3 – 39:2, 40:7-23, 48:6-16, 102:1-10; Ex. F, 132:22 – 133:24.

**Paragraph 37**

"Shortly after the sexual assault, the assailant sent Bethany a threatening text message telling her to "go fuck herself" and to "eat shit and die." This was provided to UI and acknowledged as threatening."   Ms. Atkins was not an employee of the University at the time of her deposition. (Agidius Dep., 145:5-11; Agidius 30(b)(6) Dep., 156:1-11; Atkins Dep., 64:22-23; O'Doherty Decl., Ex. L, text message)  Brereton Decl., Ex. C, 5:7-8.

**Paragraph 42**

"The only thing UI did in responses was give her a link to 'Safe Walk' to escort her to her car and relocate the perpetrator's smoking location." This statement misstates the cited testimony of Ms. Agidius as it leaves out Ms. Agidius's references to audio recordings of classes and issuance of the no contact order. (Agidius 30(b)(6) Dep., 141:1-18)

//

//

**Paragraph 46**

"UI did not view Bethany's safety concerns as valid . . ."  This statement is argumentative, conclusory and not supported by the cited testimony of Ms. Agidius. (Agidius 30(b)(6) Dep., 142:17-143:5)

**Paragraph 51**

"UI's psychological expert testified that being in the presence of the assailant can cause depression and anxiety for the victim of a sexual assault."  This statement is objectionable as it misquotes the testimony of Dr. Green, who was responding to questions in general concerning being in the presence of the perpetrator of a sexual assault.  Dr. Green did not relate it specifically to this case.  Additionally, Dr. Green testified that "certainly that's possible, yes." (Green Dep., 17:22-25)

**Paragraph 53**

"Agidius recognized that the 2010 DCL, 2011 DCL and 2014 Question and Answer Provision for Title IX all discuss removing the perpetrator from common classes with the victim as an interim accommodation."  This statement misstates the cited testimony of Ms. Agidius, who noted that removing the alleged perpetrator from common classes is "assessed on a case-by-case basis." (Agidius Dep., 135:15-23; 137:4-8; 138:6-11)

**Paragraph 58**

"Once it became apparent UI was not going to help Bethany and the investigation dragged on, . . ."  This statement is argumentative and conclusory. (Mikolas Dep., 119:14-120:3; 190:15-191:2; 214:14-23; Mikolas Decl., ¶ 7)

**Paragraph 59**

" Bethany's husband testified she would lay on the couch for weeks without moving, could not get out of bed, suffered trauma, pain, and suffering because of UI's failures . . ."  Mr. Scoggin's

attribution of plaintiff's condition being due to "UI's failures" is argumentative, conclusory and inadmissible. (Scoggin Dep., 28:4-17; 74:15-75:4; 88:16-89:20; 122:10-15)

**Paragraph 68**

"Roberts, who testified he had no role in Bethany's accommodations, emailed it would be unfair to remove the assailant."  This statement misstates the cited testimony of Roberts, who confirmed the quoted portion of the exhibits which states, "The appeal has gone up to panel and has not been ruled upon yet.  I agree it seems unfair to preclude from taking the class while it is under consideration, and perhaps the best we can ask for is for both parties to sit on opposite sides of the classroom and maintain no contact."  At no time did Roberts refer to the Student as an "assailant." (Dodge Dep., 160:23-161:9; Roberts Dep., 61:16-19; O'Doherty Decl., Ex. O, August 18, 2016 email)

**Paragraph 70**

"Dean Dodge testified the assailant could not be removed because he had another appeal coming."  This statement omits the cited testimony of Dean Dodge noting that there wasn't a final decision of the institution and because the Student was still going through the disciplinary process, he still had another appeal before the sanctions would go into place. (Dodge Dep., 163:10-17; 164:13-17; 164:21-165:2)

**Paragraph 73**

"Dean Dodge testified that he was sympathetic to Bethany's request, but was instructed by OCRI and DOS employees not to remove him."  This statement fails to include the testimony of Dean Dodge to the effect that "there is this tension point now where the University is having to weigh his due process rights, his ability to make it through the final institutional appeal process." (Dodge Dep., 182:10-16)

**Paragraph 74**

"At this time, the SDRB for UI had already ruled the assailant had violated the student code of conduct by sexually assaulting her."   This statement misstates the cited testimony as Ms. Agidius did not use terminology "by sexually assaulting her."  (Agidius 30(b)(6) Dep., 87:21-88:7; 88:17-89:2)  See Eckles Decl., Ex. 19.

**Paragraph 80**

"Another law student, who also had no contact order against the assailant, emailed UI expressing her disbelief and concern that Bethany was again being placed in a common class with the assailant." This entire statement is inadmissible hearsay.  (Dodge Dep., 204: 8-24; 206:3-13; O'Doherty Decl., Ex. T, August 22, 2016 email)

**Paragraph 82**

".  .  . and the professor was 'alarmed' by what he had learned."  This statement is argumentative, conclusory and contains inadmissible hearsay. (Dodge Dep., 214:2-14; O'Doherty Decl., Ex. V, August 22, 2016 email)

**Paragraph 87**

"UI and its employees testified that it **could** have removed the perpetrator from Bethany's small common class as an accommodation and that the DCLs advise to take such action, but UI made the decision not to do so."  This statement misquotes the actual cited testimony.  The witnesses were asked general questions concerning removing a student from class as one of the options to impose as an interim measure.  The statement also leaves out the cited testimony of Dean Dodge to the effect that there was discussion about removing the Student from common classes, but that the University would not be allowed to do so, as they were weighing the Student's due process rights to still attend class against plaintiff's request. (Agidius 30(b)(6) Dep., 76:19-24;

77:25-78:3; 86:13-19; 86:20-87:1; 107:2-6; Dodge Dep., at 68:23-69:6; 127:1-6; 127:25-128:10; 130:1-8; 172:21-24)

### Paragraph 88

Title IX Coordinator Agidius testified that UI had the option to remove the perpetrator from common classes with Bethany, but refused to do it." This is a misstatement of the cited testimony. Ms. Agidius did not testify that the University "refused" to remove the Student from common classes. As shown by the stated testimony, the University evaluates everything on a case-by-case basis and when the University looks at all cases, there is a possibility that any case would have that option. (Agidius Dep., 168:20-169:5)

### Paragraph 89

"UI even testified it had the ability to remove the perpetrator from the campus entirely during a Title IX investigation." This statement leaves out the portion of the cited testimony in which the questioner asked the witness concerning removing a student from the campus "if you determined that's appropriate." (Agidius 30(b)(6) Dep., 85:7-11; 86:6-12)

### Paragraph 91

"UI testified it was aware sexual assault victims often have trouble being in the same class with the assailant and that placing Bethany in the same class with him could impact her education and that as a victim she may not feel safe." This statement is incomplete and leaves out the portion of the cited testimony in which Ms. Agidius agreed that such was a "possibility." (Agidius 30(b)(6) Dep., 143:9-21; 144:10-18)

### Paragraph 92

"The Title IX Coordinator recognized placing Bethany in the same class with the assailant could cause mental health issues and impact her education." This misstates the cited testimony.

The witness was asked general questions and did not specify plaintiff in the cited scenario. Moreover, Ms. Agidius testified that the scenario suggested by the questioner was a "possibility." (Agidius Dep., 146:19-22; 147:7-14)

**Paragraph 95**

"UI officials who refused to remove the assailant from class receive training that sexual assaults are traumatic events, the victim generally has trouble being in the presence of the perpetrator, and placing the victim in the same class with the assailant can negatively impact their education." This statement is argumentative and the cited testimony does not support the statement. (Dodge Dep., at 55:13-57:12; 145:5-8, 22-25)

**Paragraph 97**

"Dean Dodge testified UI's refusal to remove the assailant from the common class with Bethany left her with two options – 'physically attend' with the man who sexually assaulted her or listen to "audio-recorded versions of the class" again at home." This statement is argumentative and misquotes the cited testimony of Dean Dodge. (Dodge Dep., 131:23-132:13)

**Paragraph 103**

"The decision to remove the assailant only came after Bethany threatened legal action against UI and to file a complaint with the OCR." This statement improperly implies that the cited testimony shows that the University removed the student from the bankruptcy class because it was threatened with legal action. This statement is argumentative, conclusory and without evidentiary support. (Mikolas Dep., 219:14-24; 230:12-17; 231:14-19; O'Doherty Decl., Ex. S, August 21, 2016 email; O'Doherty Decl., Ex. Q, August 21, 2016 email; Mikolas Decl., ¶ 10)

//

//

**Paragraph 104**

"UI testified it does not know why it changed its decision and removed the perpetrator from the common class after allowing him to attend multiple classes."  This statement is objectionable as it does not include the relevant portion of the testimony and declaration of Blaine Eckles. (Agidius 30(b)(6) Dep., 91:6-20) (Eckles Decl., ¶¶ 24-26; O'Doherty Decl., Ex. H, 11:22 – 13:18, 18:7 – 19:13)

**Paragraph 105**

"UI is not aware of any change in circumstances that would cause it to reverse its decision and remove the assailant from common classes."  ."  This statement is objectionable as it does not include the relevant portion of the testimony and declaration of Blaine Eckles.  (Agidius 30(b)(6) Dep., 116:12-16) (O'Doherty Decl., Ex. H, 22:12 – 23:11)

**Pargraph 107**

"UI does not know whether the decision was made at one meeting or multiple meetings, does not know who attended despite claiming up to ten people were there, does not know the date or dates, and does not recall the substance of any discussions."  This statement of "facts" is immaterial and irrelevant. (Agidius 30(b)(6) Dep., 91:25-93:18; Eckles 30(b)(6) Dep., 11:6-21)

**Paragraph 108**

"Prior to this, UI officials had never convened meetings, in person or by telephone, to discuss Bethany's safety concerns, severe anxiety and depression, shared common classes with the assailant, or accommodation requests."  This statement misquotes the cited testimony.  Ms. Agidius was not asked about plaintiff's alleged "safety concerns, severe anxiety and depression or accommodation request."  Ms. Agidius also specifically testified that there were weekly investigator meetings where "we would check in with investigators, and we typically had

representation from the Dean of Students and that might – that could have come up." (Agidius 30(b)(6) Dep., 93:19-94:6; 125:22-126:3, 17-21)

**Paragraph 112, Paragraph 113 and Paragraph 114, Paragraph 116**

These paragraphs contain legal argument and conclusions.  They also misstate the cited testimony with respect to the Student's enrollment in the class.

**Paragraph 118**

"UI's interpretation of how the decision was made to remove the perpetrator from the common class also varies, with Agidius claiming it was a collaborative decision, and Eckles claiming he made the decision unilaterally."  This statement misstates the testimony of Blaine Eckles, who did not testify that he made the decision "unilaterally."  (O'Doherty Decl., Ex. H, 20:9-18)

**Paragraph 120**

"Eckles was not consulted about Bethany's common classes with the assailant in the spring semester or her initial request to remove the assailant in early August, and instead, was only consulted almost a month later after she threatened legal action."  This statement is not supported by the cited testimony.  (Eckles 30(b)(6) Dep., 22:4-7)

**Paragraph 121**

"Agidius testified the only accommodations provided to Bethany by UI was a pamphlet with various resources listed, asking the perpetrator to switch smoking locations, and providing recordings of classes so Bethany would not have to be in class with the assailant."  This statement is not supported by the cited testimony.  (Agidius Dep., 88:16-22; 91:9-20; 161:17-19)

//

//

**Paragraph 122**

"The only accommodations UI ever requested of the assailant was that he not attend law review events, that he change his smoking location, and, after the threat of litigation from Bethany, telling the perpetrator to take the bankruptcy class by audio recording."  This statement is argumentative as it implies that the University removed the student from the bankruptcy class because of the threat of litigation from plaintiff. (Agidius 30(b)(6) Dep., 111:17-112:17; 114:6-115:3; Agidius Dep., 100:22-101:7)

**Paragraph 125**

"Dean Dodge was also never told the assailant was instructed not to attend law review events and encouraged Bethany to attend an event with the assailant, which she refused."  This statement misquotes the cited testimony of Dean Dodge, which does not state that he "encouraged" plaintiff to attend a law review event with the student. (Dodge Dep., 107:5-8; 107:21-108:3, 14-21; 110:3-7)

**Paragraph 126**

"UI denied Bethany's requests for video conferencing of common classes with her assailant despite acknowledging such requests were reasonable."  This statement is objectionable as it is misleading.  The University did not have the capability for video conferencing and plaintiff was so advised. (Agidius Dep., 97:12-24)  See Supp. Brereton Decl., Ex. D.

**Paragraph 128**

"UI never requested that the perpetrator switch study carrels so that Bethany could feel safe and made her switch."  This statement misquotes the cited testimony.  The University did not make plaintiff switch study carrels.  According to plaintiff's testimony, she was told that she "could" move her study carrel. (Agidius 30(b)(6) Dep., 118:2-4; Mikolas Dep., 118:7-9)

**Pargraph 130**

"UI never offered Bethany academic support or tutoring despite her struggling in her classes in Spring 2016."  This statement is misleading as the College of Law does not offer tutoring.  The statement improperly implies that tutoring would have been available but that the University unfairly did not offer it to plaintiff. (Agidius Dep., 190:10-17; Mikolas Dep., 213:18-21; 214:8-13; 222:3-22)

**Paragraph 132**

"Agidius testified that the perpetrator could have taken common classes by recording so Bethany could attend, but that UI never discussed Bethany's request nor did they look into the possibility of the assailant registering in a different class."  This is an incomplete statement of Agidius's testimony.  Her testimony includes the remainder of her answer to the question through p. 148:4  (Agidius Dep., 147:23-148:1; 161:2-5)

**Paragraph 133**

"UI never told Bethany the assailant would be walking at graduation, even though he had been suspended for a semester, and Bethany was forced to abstain from walking at graduation after having an anxiety attack."  This statement is objectionable as the cited testimony does not support the claim that the University "forced" plaintiff to abstain from walking at graduation. (Agidius 30(b)(6) Dep., 119:8-10; Dodge Dep., 75:9-22; Dodge Dep., 256:10-17; Mikolas Dep., 100:18-101:6; 147:21-148:3)

**Paragraph 134**

"On March 30, 2016, after Bethany expressed her concerns that UI was not helping her and she did not feel safe, Agidius, in conjunction with Dean Dodge, told Bethany UI would waive the deadlines if she wanted to move her entire family to Boise to finish law school, and Bethany

responded in disbelief UI would suggest moving to Boise to "attend classes in a less hostile environment," she was experiencing harassment, and she could not identify "a single way" UI has supported her access to school and continued education."  This characterization of Agidius's email misstates the contents of the email.  (Agidius 30(b)(6) Dep., 99:9-13; Dodge Dep., 73:7-18; Mikolas Dep., 117:14-118:6; O'Doherty Decl., Ex. X, March 30, 2016 email) .  See Supp. Agidius Decl., Ex. 25.

**Paragraph 135**

"UI does not recall ever telling another student that made a Title IX Complaint she could move to another campus rather than work to provide a safe educational environment on the current campus."  This cited testimony does not support the factual statement.  It misstates Agidius's testimony and is argumentative. (Agidius 30(b)(6) Dep., 100:13-25)

**Paragraph 136**

"UI never requested or required the assailant uproot his entire life and transfer to Boise." This statement is argumentative and conclusory.  (Dodge Dep., at 73:23-74:2; Agidius 30(b)(6) Dep., 118:25-119:2)

**Paragraph 138**

"Rather than help Bethany and address her concerns, regarding the hostile environment, Agidius responded that if she was unhappy to file a complaint with the OCR."  This statement is argumentative and conclusory.  Nowhere in the cited testimony is there a factual statement that "rather than help Bethany and address her concerns, regarding the hostile environment, . . ." (Agidius 30(b)(6) Dep., 102:23-103:2; Agidius Dep., 246:14-21; Supp. Decl. Agidius, Ex. 23)

//

//

**DEFENDANT'S OBJECTIONS TO MATERIALS CITED**
**BY PLAINTIFF IN OPPOSITION TO SUMMARY JUDGMENT**                             **- 16**

**Paragraph 139**

"Agidius, the person responsible for complying with Title IX at UI, testified she did not know whether the burden of accommodations must be shared." This statement misquotes the cited testimony. Ms. Agidius testified that she would have to review the guidance at the time. (Agidius Dep., 241:23-242:2)

**Paragraph 140**

"UI did not discuss Bethany's concerns that it was violating Title IX until Bethany threatened legal action." This statement linking any of the University's actions to plaintiff's threat of legal action is unsupported by the cited testimony and evidence. (Agidius 30(b)(6) Dep., 101:1-102:10)

**Paragraph 142**

"Shortly thereafter, on November 2, 2016, UI made the decision to restrict the perpetrator from attending all common classes with Bethany for the Spring 2017 semester after he returned from suspension." This statement improperly implies that actions taken by the University were based upon a tort claim filed by plaintiff. The statement is argumentative and unsupported by the cited testimony or evidence. (Mikolas Dep., 142:11-143:24)

**Paragraph 145**

"The OCR's DCLs in place in 2016 were the guidance documents that UI was required to follow to stay in compliance with Title IX and its employees were trained to follow the DCLs." This statement contains legal argument and is unsupported by the cited testimony and misstates the legal standard. (Dodge Dep., at 44:24-45:4; Atkins Dep., at 31:20-32:2)

//

//

**Paragraph 146**

"Agidius considers the DCLs guidance for staying in compliance with Title IX and for accommodation issues; if Agidius had questions on accommodations she would consult the DCLs for guidance." ." This statement contains legal argument and is unsupported by the cited testimony and misstates the legal standard. (Agidius Dep., 36:21-37:13; 37:24-38:2; 46:13-15; 47:19-21; 48:6-16; 52:22-53:14)

**Paragraph 148**

"UI's failures deepened Bethany's trauma and caused her to suffer major mental health issues, including diagnosed anxiety, depression, and PTSD, for which she has been receiving regular counseling and medication." This statement, referring to the University's "failures" as the cause of plaintiff's mental health issues is argumentative, conclusory, and unsupported by the cited testimony. (Mikolas Dep., 170:16-172:11; Green Dep., 84:7-14)

**Paragraph 149**

"UI's expert psychologist opined that Bethany suffers from diagnosed major depressive and anxiety disorders, caused in part, by UI's handling of her Title IX case and failure to keep the matter confidential." This statement misquotes the testimony of Dr. Green as it implies the factual determination on his part that plaintiff's mental issues were indeed caused in any part by the University's handling of her Title IX case. Instead, as shown by the cited testimony, Dr. Green stated that it was plaintiff's "perception." (Green Dep., 58:7-18; 59:11-15; 64:14-18)

**Paragraph 150**

"UI's expert psychologist also testified that Bethany suffers from pervasive psychological injuries from the assault and her perception of UI's handling of the matter thereafter." This statement is objectionable as it fails to include the cited testimony of Dr. Green that he does not

"have an opinion about how the University behaved or acted." (Green Dep., 78:18-25; 80:14-81:3; 83:25-84:6)

**Paragraph 152**

"UI's failure to accommodate Bethany impacted her marriage and played a role in her recent divorce from her husband."  This statement is objectionable as it is based solely upon the opinion of plaintiff's husband, who fails to demonstrate in the cited testimony any firsthand knowledge of the University's responses to plaintiff's report. (Scoggin Dep., 22:18-23; 24: 4-9; 25:16-22; 26:9-12; 121:10-17)

DATED this 24<u>th</u> day of June, 2019.

LAKE CITY LAW GROUP PLLC


*/ s / Peter C. Erbland*_____
PETER C. ERBLAND
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the <u>24th</u> day of June, 2019, I filed the foregoing electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Attorneys for Plaintiffs:

Brook L. Cunningham                     ☑ Email: blc@randalldanskin.com
Shamus T. O'Doherty                                sto@randalldanskin.com
RANDAL | DANSKIN, P.S.
601 W. Riverside Ave., Suite 1500
Spokane, WA  99201-0653

                          */s/ Nicky Hastings*
                          Nicky Hastings

W:\CDADOCS\04298\00001\DISC\C330708.DOCX